Girard Prescription Center and Gold-Brick Companies, Inc., Petitioners *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued April 11, 1985, before Judges CRAIG and COLINS, and Senior Judge KALISH, sitting as a panel of three.

*James C. Schwartzman,* with him, *Michael B. L. Hepps, Schwartzman & Hepps,* for petitioners.

*Bruce G. Baron,* Assistant Counsel, for respondent.

OPINION BY SENIOR JUDGE KALISH, July 19, 1985:

The petitioner, Girard Prescription Center, Inc. (Girard) is a provider-pharmacy under the Medical Assistance Program and is owned entirely by the

petitioner, Gold-Brick Companies, Inc. The petitioners appeal the order of the Hearings and Appeals Unit of the Department of Public Welfare (DPW), sustaining DPW's proposed suspension of Girard from participation in the Medical Assistance Program for a period of two years.[1]

On September 2, 1982, DPW notified the petitioners that it was suspending them as a provider pharmacy in the Medical Assistance Program for a period of two years. On March 28, 1984, a hearing attorney for DPW issued an adjudication in which he found that on three separate occasions an employee of Girard, who was not a licensed pharmacist nor a pharmacy intern, filled, packaged, sold and dispensed prescriptions out of the presence of and not under the direct, immediate supervision of a licensed pharmacist. In each instance, undercover agents for the Board, posing as medical assistance recipients, made the purchases which Girard later billed to DPW.

On appeal to this Court, the petitioners contend that:

> 1) the specific grounds upon which DPW issued the Basis for Termination are not, as a matter of law, violations upon which DPW has authority to terminate or suspend a provider agreement;
>
> 2) the words "immediate personal supervision" found in Section 8(2), of the Pharmacy Act,[2] are unconstitutionally vague;

---

[1] On May 11, 1984, DPW's Executive Deputy Secretary ruled that the proposed suspension should not apply to the Gold-Brick Companies, Inc., and three other companies with related ownership to Girard, thus leaving only Girard subject to the sanction of suspension.

[2] Act of September 27, 1961, P.L. 1700, as amended, repealed in part by Section 401(a) of the Bureau of Occupational Affairs Fee Act, Act of July 1, 1978, P.L. 700, as amended, 63 P.S. §390-8(2).

3) suspension of a pharmacy from the Medical Assistance Program for violating section 8(2), 63 P.S. §390-8(2), requires a finding of *mens rea* on the part of the owners of the pharmacy; and

4) the penalty of two years suspension from the Medical Assistance Program is unduly harsh and is not supported by substantial evidence.

DPW may impose sanctions, including the suspension or termination of the provider agreement, if the pharmacy has provided services outside the scope of the customary standards of pharmaceutical practice. Section 1121.81(a) of 55 Pa. Code provides:

Provider misutilization:

A provider determined to have billed for services inconsistent with Medical Assistance Program regulations, to have provided services outside the scope of customary standards of pharmaceutical practice, or to have otherwise violated the standards in the provider agreement, is subject to the sanctions described in Chapter 1101[3] (relating to general provisions).

DPW argues that when Girard permitted one of its unlicensed and untrained employees to practice pharmacy, Girard's conduct went prohibitively beyond the customary standards of pharmaceutical practice. We agree.

Section 8(2) of the Pharmacy Act, 63 P.S. §390(8)(2) prohibits:

any person not duly licensed as a pharmacist, pursuant to section 3 hereof, to engage in the

---

[3] 55 Pa. Code §1101.77(a)(1) authorizes DPW to terminate a provider's enrollment in the Medical Assistance Program for failing to comply with Chapter 1121 (55 Pa. Code §§1121.1-1121.81) which covers provider pharmacies.

practice of pharmacy, including the preparing, compounding, dispensing, selling or distributing at retail to any person any drug, except a pharmacy intern under the immediate personal supervision of a pharmacist. . . .

Furthermore, 49 Pa. Code §27.12[4] sets forth in detail the respective duties of pharmacists, pharmacy interns

---

[4] 49 Pa. Code §27.12 provides:

Practice of pharmacy.

(a) It shall be unlawful for any person not duly licensed as a pharmacist, pursuant to the act, to engage or allow another to engage in the practice of pharmacy, including the preparing, compounding, dispensing, selling, or distributing at retail to any person any drug, except a pharmacy intern or such other authorized personnel under the immediate personal supervision of a pharmacist, who may assist the pharmacist with the preparation of other than Schedule II controlled substances and except personnel engaged in clerical functions, provided that:

(1) Prior to preparing the prescription, a licensed pharmacist shall review the prescription and make necessary professional determinations, which shall include the interpretation of the prescriber's order with respect to the drug name, strength, dosage, quantity, and allowable refills.

(2) After the prescription has been prepared, a licensed pharmacist shall thoroughly inspect the prepared prescription to verify the accuracy of the preparation, dosage, and number of allowable refills.

(b) In the actual preparation of a prescription, the procedures which require professional skill and training, such as the verification of proper ingredients, the weighing of ingredients, and the compounding of other similar processing of ingredients into the final prescription drug shall be performed by a licensed pharmacist or a licensed pharmacist intern under the direct personal supervision of a licensed pharmacist.

(c) Personnel authorized by the pharmacist to assist him may:

(1) Accept written prescriptions.

(2) Convey written prescriptions to the pharmacist.

and "authorized personnel" of a pharmacist. This latter section, coupled with section 8(2) of the Pharmacy Act, creates a clear standard of pharmaceutical practice which, if violated, would be a basis for DPW to impose sanctions. The petitioners do not contest the hearing attorney's findings that an unlicensed employee of Girard, who was not a pharmacy intern, under the direct supervision of a registered pharmacist, filled and dispensed prescriptions. Therefore, we hold that such conduct was in violation of the customary standard of pharmaceutical practice and sanctionable by DPW.

The petitioners next contend that the requirement of section 8(2) of the Pharmacy Act, that the pharmacy intern be under the "immediate personal supervision" of a pharmacist when dispensing prescriptions, denies them due process because the term "immediate personal supervision" is unconstitutionally vague. The petitioners' argument is misguided. While section 8(2) of the Pharmacy Act does permit a pharmacy intern under the immediate personal supervision of a licensed pharmacist to practice pharmacy, there is no evidence in the record, nor do the petitioners assert, that the Girard employee who practiced pharmacy was actually a pharmacy intern. On the contrary, the hearing attorney found that Girard's employee was not an intern but an unlicensed pharmacist's assistant. Consequently, we need not address the petitioners' constitutional challenge to the term "immediate personal supervision."

(3) Carry containers of drugs in and around the pharmacy.

(4) Count pills, tablets, or capsules.

(5) After review by the pharmacist, package for delivery and deliver the drugs.

(6) Perform clerical tasks relating to the practice of . pharmacy.

The petitioners next argue that DPW may not terminate a pharmacy's provider agreement for acts of an employee not in the knowledge of the pharmacy's owners. Section 1121.81 of 55 Pa. Code permits DPW to impose sanctions on a provider pharmacy which has *provided* services outside the scope of customary pharmacy practice. There is no element of scienter included in the regulation and we will decline from engrafting one where none is required by law. A provider pharmacy can only provide services through the actions of its employees. It is reasonable then, for DPW to hold the provider pharmacy accountable for the services it provides to DPW recipients.

The petitioners' last contention is that the two-year suspension of petitioner Girard from the Medical Assistance Program is unduly harsh. The imposition of sanctions by DPW on a provider pharmacy is left largely to the discretion of DPW.[5] This court may not disturb the exercise of that discretion absent proof of fraud, bad faith or manifest and flagrant abuse of discretion. *Nolf v. Department of Public Welfare,* 69 Pa. Commonwealth Ct. 398, 452 A.2d 574 (1982). Here, where DPW had the authority pursuant to 55 Pa. Code §1101.77(a)(1), to terminate Girard's provider agreement permanently, and no fraud or bad faith has been alleged, the imposition of a two-year suspension of Girard's provider agreement was not an abuse of discretion.

Accordingly, we affirm.

---

[5] Section 1407 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *added by* Act of July 10, 1980, P.L. 493, *as amended,* 62 P.S. §1407 (Supp. 1985), provides for criminal penalties for certain provider prohibited acts. Authority to institute criminal proceedings under this section is left with the Attorney General and the county district attorney, concurrently. Section 1407(b)(4), 62 P.S. §1407 (b)(4).

## ORDER

The order of the Department of Public Welfare, dated March 26, 1984, File No. 22-82-7, affirming the suspension of Girard Prescription Center, Inc. from the Medical Assistance Program for a period of two years is affirmed.