Westinghouse Electric Corporation, Appellant, *v.* Workmen's Compensation Appeal Board and Catherine Etzel, Widow of Elmer Etzel, Appellees.

Argued December 6, 1973, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Richard C. Witt,* with him *Thomas Lewis Jones, Samuel P. Gerace, Robert C. Jones* and *Jones, Gregg, Creehan and Gerace,* for appellant.

*Herbert B. Lebovitz,* with him *James N. Diefenderfer* and *Lebovitz & Lebovitz,* for appellees.

OPINION BY JUDGE WILKINSON, January 4, 1974:

This is an appeal from the decision of the Workmen's Compensation Appeal Board which affirmed the award

of the referee to the claimant-appellee for the death of her husband. The decedent died at approximately 3:15 p.m. on the afternoon of July 12, 1967, having worked at his usual position as a grinder from 7:30 a.m. that day. His shift would have been completed at 3:30 p.m. He had worked for this employer, according to the testimony, for 35 or 36 years. The decedent "dropped dead" on the job at the end of the day's work. The fundamental factual question determined by the referee was that the death was the result of an accident. This finding was affirmed by the Workmen's Compensation Appeal Board which sustained the award. We must affirm.

The Board, in a well-reasoned opinion by Chairman Culbertson, concluded that decedent-husband died of a heart attack brought on by heat stroke or heat prostration. It found that this was an accident under the unusual pathological result rule. Appellant contests the decision of the referee and the Board on the ground that the evidence will not support this finding. Specifically, the appellant asserts that the claimant-appellee's expert witness, who testified that the death was the result of heat stroke or heat prostration, had never seen the deceased alive or dead, did not testify based on a properly framed hypothetical question, and relied upon assumed facts not in evidence.

To sustain the Board, we will take the facts relied upon by the expert witness and by the Board which appellant asserts are not in the record, and will point out where they appear.

Appellant asserts that the only evidence of temperature was its Exhibit "C," being the weather bureau's report for Pittsburgh for that day, showing the highest outside temperature to be 88 degrees. The claimant-widow testified it was a hot day. John Kurtz said it was hot, 80 degrees or 90 degrees. Joseph Palochko said it was "hot and sort of humid." Margaruite Ma-

katura testified it was in the nineties that day. She said she knew, for she has emphysema and listened to the radio for the temperature to determine whether she could leave her air-conditioned home. Dr. Gates, employer-appellant's expert witness, testified: "It was a warm day. I know that. It was hot. . . . I'd say the temperature that day was in the nineties." Lawrence Hornyak, employer-appellant's foreman, testified: "It was hot, 90 degrees."

Appellant asserts there was nothing in the record that decedent complained about the temperature in the building and did not appear unusual. Joseph Palochko testified that this was the only day decedent ever complained, and that just a few minutes before he dropped dead, decedent said: "Boy, I'm glad this day is over." The record is replete with testimony that decedent was a healthy, robust individual who was never ill and never complained. As indicated above, many witnesses testified as to the excessive, oppressive heat. Certainly the Board was entitled to conclude that this comment by decedent was a complaint by him as to the temperature at work that day.

Appellant claims that no other employee complained about the temperature. On the contrary, Joseph Palochko testified his response to decedent was: "You're not the only one," and further testified he had never said that before.

Appellant asserts that essential to claimant-appellee's expert's testimony that decedent died of cardiac arrest that resulted from loss of electrolytes and loss of fluid was that decedent was sweating, and that there was no evidence of sweating in the record. There was sufficient evidence of sweating from which evidence the Board could have concluded that decedent was sweating. John Kurtz, who testified as to the temperatures at work that day, stated: "You're bound to work your-

self a little sweat." Joseph Palochko testified: "[I]t was sweaty that day."

The other principal ground on which appellant would have us reverse the Board is the assertion that the Board could not rely on the testimony of claimant-appellee's expert witness, Dr. Kopelman, because he was not asked a proper hypothetical question. It would have been better practice if claimant-appellee's attorney had asked a properly phrased hypothetical question, containing only facts in evidence. However, we cannot say that it was reversible error in this unusual case for the Board to accept this opinion based on the summary of the evidence in the record, since the factual evidence offered is uncontradicted. It is particularly significant that when the able counsel for appellant, on cross-examination, challenged Dr. Kopelman to state decedent's height and weight, he referred to the summary supplied him by claimant-appellee's attorney and replied: "I have it here somewhere. Weighed 180 pounds. He was six foot one and a half inch." This was the testimony of claimant-appellee. Claimant-appellee said decedent had lost 20 pounds some 15 years before, and then "went up and down."

Once we conclude, as we do, that the record supports the finding that death resulted from a heart attack caused by a heat stroke or heat prostration, the law is quite clear that it was the result of a compensable accident.

The Superior Court reviewed the law and collected the cases on this point in a case the facts of which were surprisingly close to the instant case. In that case, the decedent, an apparently well man with no history of illness, reported to work and worked all day in a foundry which had a temperature of 85 to 90 degrees on August 28. In the late afternoon, he acted abnormally and at 4:30 p.m., he was taken to the dispensary

with "blood presure unobtainable, pulse 180." The expert testimony was that death was caused by heat stroke. Judge ERVIN, in his opinion, collected the cases on this subject and concluded that the Board was in error in saying that there was no accident:

"We are convinced that there was an accident within the meaning of the Workmen's Compensation Law and that the board capriciously disregarded the competent and only evidence in the case as to the cause of decedent's death. Without going into detail, suffice it to say that the record in this case clearly shows that when the decedent came to work on the morning of August 28, 1959 he was in good health and that later on that day he suffered a heat stroke while engaged in his work at the defendant's foundry. The record fully substantiates the opinion of Dr. Girsh in this connection. There is no contrary evidence. In a long line of cases both our Court and the Supreme Court have held that heat prostration may constitute a compensable accident if the circumstances indicate that the death resulted from it during the course of the employment: (collecting the Pennsylvania cases which we omit).

". . . Heat stroke or heat prostration is defined in Skinner's Pa. Workmen's Compensation Law, 4th ed., Vol. 1, page 288, as follows: 'A heatstroke or heat prostration is an untoward, unexpected mishap and accidental injury and it is immaterial whether it is produced by artificial heat or by natural heat of the sun, directly or through the heated atmosphere, if the exhaustion comes in the course of employment.'

"We are therefore of the opinion that the board was in error in its finding that there was no compensable accident in this case." *Davis v. Welsbach Corp.*, 201 Pa. Superior Ct. 520, 523, 524, 193 A. 2d 621, 623 (1963).

In an earlier decision, Justice, later Chief Justice, STERN collected the cases dealing with this general sub-

ject area, and classified sunstroke and heat prostration as falling within the unusual pathological result doctrine. *Parks v. Miller Printing Machine Co.*, 336 Pa. 455, 459, 9 A. 2d 742, 744 (1939).

Accordingly, we enter the following

## ORDER

Now, January 4, 1974, the appellant, Westinghouse Electric Corporation, is hereby ordered and directed to pay to Catherine Etzel, claimant, widow of Elmer J. Etzel, decedent, compensation at the rate of thirty-four dollars ($34.00) per week beginning July 19, 1967, and continuing for a period of five hundred (500) weeks, or until the said Catherine Etzel remarries, whichever occurs first.

Interest at the rate of six percent (6%) per annum is payable on all deferred payments of compensation, in accordance with Section 410 of the Workmen's Compensation Act.

The appellant is ordered and directed to pay all statutory medical and hospital expenses, and reasonable funeral expenses, not to exceed seven hundred fifty dollars ($750.00), and the following bills of cost as taxed by the referee:

| | |
|---|---|
| John Kurtz, 420 Joan Drive, Irwin, Pa. | $ 3.00 |
| Joseph Palochko, 913 Patton St., Monroeville, Pa. | $ 3.00 |
| Albin Makatura, 1143 Wilkins Avenue, North Braddock, Pa. | $ 3.00 |
| Margaruite Makatura, 1143 Wilkins Avenue, North Braddock, Pa. | $ 3.00 |
| | $12.00 |