Alcoa, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Delphine Huber, Widow of Floyd Huber, Deceased, Respondent.

Argued November 13, 1979, before Judges CRUM-LISH, JR., MENCER and CRAIG, sitting as a panel of three.

*Wallace B. Eldridge, III,* of *Lipkin, Stutzman, Marshall & Bohorad,* P.C., for appellant.

*Stephen P. Ellwood,* with him *Lester Krasno,* for appellee.

OPINION BY JUDGE CRAIG, February 1, 1980:

Alcoa (employer) appeals from a decision and order of the Workmen's Compensation Appeal Board (board) affirming the referee's grant of benefits to claimant, wife of decedent Floyd Huber.

Decedent, 52 years old, had been employed by Alcoa for 29 years. He last worked on August 10-11, 1976, the 11:00 p.m. to 7:00 a.m. shift, when, as the testimony establishes, decedent worked as part of the stretcher-saw-finisher crew, racking various weights and lengths of aluminum. At the crew's 4:30 a.m. break, decedent complained that his shoulder was hurting him badly; after that break, decedent performed only paper work for the remainder of the shift.

Claimant testified that decedent, complaining of pain across his shoulders and numbness in his arm, went to the doctor around 5:00 p.m. on August 11, and returned home with medication for arthritis. Claimant testified that during the next days, decedent's condition deteriorated: decedent developed a cough, felt wet and clammy, had trouble breathing, couldn't sleep, and continued to experience shoulder pain. On August 16th, decedent's increased symptomology prompted claimant to call a different doctor, who admitted decedent to the hospital. Decedent died one-and-a-half hours after admission.

Where the board has affirmed the award of the referee granting benefits, our scope of review is limited to a determination of whether there is substantial competent evidence to support any necessary findings of fact and whether the board and referee have committed an error of law. *Workmen's Compensation Appeal Board v. Auto Express, Inc.*, 21 Pa. Commonwealth Ct. 559, 561, 346 A.2d 829, 831 (1975).

Employer first asserts that the board erred in failing to remand the case to the referee where the referee did not make a specific finding with regard to the exact nature of the work decedent was engaged in on his last work shift.

In a heart attack claim, claimant must show that: (1) the heart attack arose in the course of decedent's

employment, and (2) that it was causally connected with his work. *Workmen's Compensation Appeal Board v. Bowen*, 26 Pa. Commonwealth Ct. 593, 364 A.2d 1387 (1976); *Workmen's Compensation Appeal Board v. Jeddo Highland Coal Co.*, 19 Pa. Commonwealth Ct. 90, 338 A.2d 744 (1975).

Although the referee's findings are not stated as specifically as we might like, the cumulative findings of the referee enable us to exercise appellate review sufficiently to conclude that the referee did make the necessary findings that decedent's heart attack arose in the course of his employment. The pertinent findings are that:

3. There is substantial evidence that the claimant did, in fact, suffer a myocardial infarction. This was testified to directly by the medical witness presented by the claimant. This witness, Dr. Munier, never saw the decedent in his lifetime, but he expressed the opinion on hearing the testimony and a hypothetical question put to him, that the decedent died of a pulmonary edema which is a direct result of myocardial infarction.

. . .

5. We accept as credible and find as a fact, as testified to by claimant's medical witness, that Floyd Huber's injury, i.e., the myocardial infarction, was related to his work.

6. Daniel Lescavage, a co-worker, said that, after the 'racking' was done, about four thirty a.m. or five a.m., the decedent complained of pain in his shoulder.

. . .

10. Claimant's decedent suffered a work injury in the form of a myocardial infarction while in the course of his employment and re-

lated thereto while working for the self-insured employer on August 11, 1976.

Testimony from Daniel Lescavage, decedent's co-worker, substantially supports the referee's sixth finding, that it was after the "racking" that decedent began to complain of pain across his shoulder. Lescavage testified that decedent was a finisher on the shift in question and that finishers participate in racking aluminum on every shift.

Claimant's medical expert testified that decedent died of pulmonary edema which was the result of a myocardial infarction suffered on his last night of work. On direct questioning, claimant's expert stated unequivocally that:

A. In my opinion the work while at his regular job involved lifting of materials, activities like that weighing up to 140 pounds, would suddenly precipitate a heart attack.

Q. And is it your opinion that that activity produced the infarction in this instance?

A. Yes.

Claimant has shown sufficient causal connection between the occurrence of decedent's heart attack and working duties to establish that the dealth was related to decedent's employment.

Employer also appeals the decision of the referee and the board on the ground that claimant's expert medical witness' testimony was elicited on the basis of an improperly framed hypothetical question.

Employer objected to that part of the hypothetical which assumed that decedent assisted in "lifting aluminum", alleging that the evidence proves that the racking process requires only the lowering of aluminum pieces from a conveyor onto the rack. However, claimant's witness, a co-worker, testifying to the nature of the activities performed in the stretcher-saw-finisher process, did use the term "lift-

ing.'' And a careful reading of the testimony of both claimant's and employer's witnesses, makes clear that, whether the racking process actually entailed "lifting" or "lowering", the process definitely necessitated supporting and sustaining various weights of aluminum so that "lifting" was not an inappropriate term.

Further, employer alleges that another portion of the hypothetical question, which stated that decedent racked pieces which "weighed up to approximately 140 pounds together with two other men" and that in the course of the work shift, the crew racked "50,000 pounds" of aluminum, is error. Employer asserts that the quantity elements of the hypothetical were posed in such a way as to convey the idea that decedent was single-handedly moving such great quantities.

A review of the testimony, especially that of decedent's co-worker, established—as the referee ruled at the time—that the facts expressed in claimant's hypothetical were in evidence. Although, as employer points out, the witness on cross-examination made seemingly contradictory statements, questions of credibility and choices between conflicting testimony, including questions which arise from a witness' inconsistent testimony, are ultimately for the referee, not this court. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board*, 31 Pa. Commonwealth Ct. 590, 595, 377 A.2d 1007, 1010 (1977); *Workmen's Compensation Appeal Board v. Quick*, 25 Pa. Commonwealth Ct. 203, 359 A.2d 852 (1976).

As required, the facts formulating the basis of the hypothetical question were in evidence. *Westinghouse Electric Corp. v. Workmen's Compensation Appeal Board*, 11 Pa. Commonwealth Ct. 369, 314 A.2d 48 (1974). Further, employer had ample opportunity

to and did frame a counter hypothetical for its own expert medical witness.

Finally, employer contends that the board erred in upholding the referee's ruling refusing to admit into evidence medical records of decedent's family physician, Dr. Hortner, who died before the hearings began. Employer sought the admission of the records as proof that decedent had been diagnosed and treated by Dr. Hortner on August 11, 1976 for arthritis, not myocardial infarction.

Claimant objected to the introduction of the records on the ground that the documents did not initially qualify as business records under the Pennsylvania Uniform Business Records as Evidence Act, Act of May 4, 1939, P.L. 42, 28 P.S. §91b[1] where (1) the identifying witness had not worked with Dr. Hortner since 1942 and, therefore, could not satisfactorily identify the signature or the documents; and (2) no foundation had been laid for the authentication of the documents as contemporaneously-made business records, where the identifying witness was not the custodian of the records. Although medical records of a deceased physician may be admissible even though they include opinion or diagnosis, the documents must first qualify as business records under the Act. *Myers v. Genis,* 235 Pa. Superior Ct. 531, 344 A.2d 691 (1975). Here, the referee correctly ruled that the employer had not properly qualified the records.

We affirm the order of the board.

### ORDER

AND Now, this 1st day of February, 1980, the order of the Workmen's Compensation Appeal Board, dated January 4, 1979, No. A-75355, is affirmed. Accordingly, it is ordered that judgment be entered in

---

[1] Repealed by Section 2(a) of the Act of April 28, 1978, P.L. 202. A similar provision is now found at 42 Pa. C.A. §6108.

favor of claimant, Delphine Huber, and against the Aluminum Company of America, self-insured, in the following amounts:

1. Compensation in the amount of $133.92 per week, beginning August 11, 1976, and continuing within the terms and limitations of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1 et seq.

2. Alcoa shall reimburse claimant for burial expenses in the amount of $1,500.00.

3. All deferred payments of compensation shall bear interest at the rate of 10 percent per annum.

4. Alcoa is ordered to deduct from any and all payments due the claimant, now and in the future, a sum equivalent to 20% thereof and to remit the same with the same frequency with which payments are made to the claimant, to Lester Krasno, Esquire, claimant's counsel, as an approved fee for his representation of her in these proceedings.

Judge DiSALLE did not participate in the decision in this case.