Lukens, Inc., formerly known as Lukens Steel Company, Petitioner *v.* Workmen's Compensation Appeal Board (Hasiey), Respondents.

Argued June 4, 1985, before Judges CRAIG and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*Mary Ann Rossi,* with her, *Terry W. Knox, MacElree, Harvey, Gallagher, O'Donnell & Featherman, Ltd.,* for petitioner.

*Neil M. Shukovsky, Galfand, Berger, Senesky, Lurie & March,* for respondents.

MEMORANDUM OPINION BY JUDGE CRAIG, August 9, 1985:

Lukens Steel Company appeals an order of the Workmen's Compensation Appeal Board which af-

firmed a referee's grant of fatal claim benefits to Sarah Hasiey, for the death of her husband, Joseph. We must determine[1] whether substantial evidence supports the referee's findings and conclusion that Joseph Hasiey's death arose in the course of his employment and was related to it, and was therefore compensable under §301(c) of The Pennsylvania Workmen's Compensation Act,[2] 77 P.S. §411(1).

At the time of his death, the decedent was employed as an inspector gang leader by Lukens Steel Company, for whom he had worked for thirty-one years. In performing his job, an inspector gang leader was required to patrol three separate buildings approximately three hundred yards long by forty yards wide. On February 6, 1978, the decedent left home early to drive to work through a heavy snowstorm; he arrived on time for his scheduled 3:00 p.m. to 11:00 p.m. shift. Because of the adverse weather conditions, the decedent and other employees who had worked that shift remained overnight at the Lukens plant. The decedent spent a restless night trying to sleep on top of a desk.

The following morning, the inspector gang leader scheduled to work the 7:00 a.m. to 3:00 p.m. shift did not report to work. Therefore, the decedent began working that shift in his place.

Before completing the 7:00 a.m. to 3:00 p.m. shift, the decedent prepared to dig his car out of the snow-covered Lukens parking lot and leave for home. How-

---

[1] In a workmen's compensation case where, as here, the party with the burden of proof prevailed before the referee and board, the Commonwealth Court's scope of review is limited to determining whether substantial evidence supports the findings of fact, and whether constitutional rights were violated or an error of law committed. *Alcoa v. Workmen's Compensation Appeal Board,* 49 Pa. Commonwealth Ct. 152, 410 A.2d 945 (1980).

[2] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§1-1066.

ever, at approximately 1:45 p.m., a fellow employee found the decedent's body in the clock room, the apparent victim of a fatal heart attack.

In *Krawchuk v. Philadelphia Electric Company*, 497 Pa. 115, 439 A.2d 617 (1981), the Supreme Court confirmed the rule that a claimant seeking benefits for a fatal heart attack need only establish that the attack arose in the course of employment and was related thereto.

At the referee's hearing, Lukens Steel introduced the deposition of Dr. Walter Herman who testified that, in his opinion, the decedent's death was caused by stress related to working a second shift after a restless night, which aggravated the decedent's pre-existing coronary disease.[3] The claimant introduced the testimony of Dr. Digilio, whose opinion was substantially similar to that of Dr. Herman.[4]

---

[3] Dr. Herman testified as follows:

A. I'm factoring the totality. I think as you described the question from the beginning to the very end, you related a stressful situation of driving through snow, et cetera. However, I think the more important portion of his stress was the fitful night's sleep that he had with inability to get proper rest.

Q. Added to the fact that he had to work at the 7:00 to 3:00?

A. And that he had to work again the following morning.

[4] Dr. Digilio testified as follows:

Therefore we have an individual who did not apparently have his normal rest and continued to work. Then adding insult to injury, this individual was then seen with a shovel in his hands going out to the parking lot and to his car, which was later found to have been dug out. As a matter of fact, it is also stated by one of the witnesses that the parking lot was not shoveled for two or three days later. It means that the decedent had to walk through this deep now, which in itself is a severe and hazardous stress for such an individual.

Lukens argues that the decedent's death was not related to his employment because the stress factors that contributed to the decedent's death were related to circumstances outside his employment, specifically the weather emergency. However, both experts agreed that it was the cumulative effect of spending a restless night on the employer's premises, followed by working an extra shift and walking through deep snow, which placed extraordinary stress on the decedent, precipitating his death.

Lukens also argues that the decedent's death did not arise in the course of his employment. Lukens claims that it did not require any employees to remain on the premises the night of February 6, nor to work the 7:00 a.m. to 3:00 p.m. shift on the morning of February 7 if they were not already scheduled to do so; the individual employees were free to stay or leave as they chose. Therefore, Lukens argues, although the decedent may have been on the employer's premises at the time of his death, he was not required to be there, and his death therefore did not "arise in the course of his employment" under the Act.

However, the crucial point is not whether the decedent voluntarily chose either to spend the night or to work the 7:00 a.m. to 3:00 p.m. shift the following morning. Rather, the determinative facts are that the decedent did stay overnight on February 6, and he did begin to work the 7:00 a.m. to 3:00 p.m. shift on February 7, after which he suffered a fatal heart attack. The voluntariness of those actions does not alter their

Therefore, in my judgment, this individual was made by the stresses to increase his heart action and also since that heart action had to have increased blood supply through the coronary system, that the coronary system was incapable and this individual, therefore, during the periods of these stresses was in effect causing his heart to work in conditions deficient in oxygen.

causal relation to the decedent's employment and death, which was established by the testimony of both claimant's and employer's expert witnesses.

Lukens also challenges several of the referee's findings of fact on the basis that the evidence supporting those findings was offered by witnesses whose credibility Lukens questions. Of course, credibility determinations are the exclusive province of the referee, and cannot be disturbed on appeal. *Dick's Delicatessen Paoli, Inc. v. Workmen's Compensation Appeal Board (DeVirgilio)*, 82 Pa. Commonwealth Ct. 444, 475 A.2d 1345 (1984). Our review of the record discloses substantial evidence to support the referee's findings and conclusions that the decedent's death arose in the course of his employment and was related thereto.

Accordingly, we affirm.

ORDER

Now, August 9, 1985, the order of the Workmen's Compensation Appeal Board at No. A-84909 dated February 23, 1984, is affirmed.