The ALPINE GROUP, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (DePELLEGRINI), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 20, 2004.

Decided Sept. 27, 2004.

Robert J. Pasquarelli, Pittsburgh, for petitioner.

Amiel B. Caramanna, Jr., Pittsburgh, for respondent.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

The Alpine Group (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), affirming the decision of the Workers' Compensation Judge (WCJ), granting the claim petition filed on behalf of John DePellegrini (Claimant). We now affirm.

Claimant began working as a bricklayer in 1951. He was a member of the union and was assigned to various employers over the years. Throughout his years of work, Claimant was routinely exposed to brick dust, silica and asbestos. In the early 1990's, Claimant began experiencing breathing problems. Claimant sought and received treatment for his problems from his family physician, Dr. Macy Levine. Dr. Levine diagnosed Claimant as suffer-

ing from asthma and prescribed him various breathing medications.

Claimant continued working until May 10, 1996, at which time he took his retirement as the difficulty he had breathing prevented him from performing his work. Claimant was approaching age sixty-four at the time of his retirement. Following his retirement, Claimant received pension benefits as well as Social Security retirement benefits. Nevertheless, Claimant's breathing problems continued. In April of 2000, Dr. Levine ordered x-rays of Claimant's chest which revealed silicosis and asbestosis. Dr. Levine informed Claimant of his findings. This was the first time that Claimant learned that his breathing problems were related to his employment.

Claimant proceeded to file separate claim petitions against five previous employers, LTV Steel, Adience, Inc., BMI, BMI–France and the Alpine Group.[1] In each of these petitions, Claimant alleged that he suffered from pneumoconiosis due to exposure to silica and asbestos and he requested total disability as of April 11, 2000, and continuing. Each of the named employers filed an answer essentially denying the allegations of Claimant's respective petitions. The petitions were thereafter consolidated and assigned to the WCJ for purposes of litigation and decision.

At the first hearing in this matter, Adience, Inc., BMI and BMI–France advised the WCJ that they were all part of the Alpine Group, that they all were insured by the same insurer and that the Alpine Group would be the responsible employer for purposes of the ongoing litigation. Additionally, all parties agreed that in the event of an award to Claimant, Employer was entitled to a credit for its pro rata contribution to Claimant's pension plan. Moreover, during the course of litigation, the parties ultimately agreed that there were no issues in this case concerning Claimant's medical condition or notice.[2]

Claimant also testified at the first hearing on his own behalf, relating a history of his employment as a bricklayer and detailing his ongoing breathing problems. Claimant indicated his belief that his breathing problems were related to asthma. Claimant denied ever smoking cigarettes, cigars or a pipe. Claimant indicated that his breathing troubles caused him to stop working as of May 10, 1996, at which point he point he accepted early retirement.[3] Claimant also indicated that he first learned that he was suffering from silicosis and asbestosis during an office visit with Dr. Levine in April of 2000. Further, Claimant indicated that he would have continued to work after May of 1996 if he was physically capable.

On cross-examination, Claimant acknowledged that he had been treating with Dr. Levine since 1965 for breathing problems, which he attributed to allergies at that time. In addition, on cross-examination, in response to a direct question from Employer's counsel, Claimant indicated that even if he was physically capable, he would not have continued working after he reached age 65.

1. The claim petition against LTV Steel was later dismissed by the WCJ as the parties agreed that Claimant was never employed by LTV Steel.

2. Employer's medical expert agreed with the diagnosis rendered by Claimant's treating physician, Dr. Levine, i.e., Claimant suffered from silicosis and asbestosis, as well as its relationship to Claimant's extended work history as a bricklayer. Further, Employer's medical expert agreed with the opinion of Dr. Levine that Claimant's medical condition rendered him totally disabled.

3. Claimant has not worked anywhere since his retirement.

However, at a later hearing in this matter, Claimant clarified this statement, indicating that he understood the above question as asking if he planned on continuing with his pre-retirement work inside brick ovens after reaching that age. Claimant testified that he could not do that type of work after age 65. Claimant testified that he did indeed plan on working after age 65, outside on houses or "any kind of job that [his] breathing would allow [him] to do." (R.R. at 62a). On cross-examination at this hearing, Claimant indicated that if he did not have any breathing problems when he reached age 65 he would have "kept on working." (R.R. at 64a).

Ultimately, the WCJ issued a decision and order granting Claimant's claim petition.[4] As to Claimant's retirement, the WCJ concluded that that Claimant had credibly testified that he stopped working because he was having trouble breathing. The WCJ further concluded that the evidence of record failed to demonstrate that Claimant had voluntarily removed himself from the labor market. Employer appealed to the Board and the Board affirmed.

In its appeal to the Board, Employer argued that the WCJ erred by failing to make a finding regarding Claimant's date of injury. The Board noted that this argument related to Employer's ability to seek an offset for Claimant's receipt of Social Security retirement benefits under Section 204(a) of the Pennsylvania Workers' Compensation Act (Act).[5] The WCJ did not address this issue, but did find that Claimant's last date of exposure to be May 10, 1996. Utilizing this date of last exposure as the date of injury, the Board concluded that Employer was not entitled to a credit under Section 204(a) and that a remand to the WCJ was unnecessary. Employer thereafter filed a petition for review with this Court.

On appeal,[6] Employer argues that the Board erred in affirming the decision of the WCJ, as said decision was not reasoned nor supported by substantial evidence. More specifically, Employer argues that the WCJ failed to reconcile inconsistencies in Claimant's testimony regarding his reasons for retirement and that the evidence of record fails to establish that Claimant was forced to retire due to a work injury or disease. We disagree.

 In an occupational disease case, a claimant has the burden of proving all the necessary elements to support an award of benefits under the Act. *County of Allegheny v. Workers' Compensation Appeal Board (Jernstrom)*, 848 A.2d 165 (Pa.

---

4. In her order, the WCJ, as per the agreement of the parties, directed that Employer be granted a credit against Claimant's compensation benefits for its pro-rata share of contributions to Claimant's pension plan.

5. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 71(a). This Section provides an employer with a credit in the amount of fifty percent of a claimant's Social Security retirement benefits, provided that the claimant's injury occurred on or after the effective date of what is referred to as the Act 57 [Act of June 25, 1996, P.L. 350] amendments, i.e., on or after June 24, 1996.

6. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. We acknowledge our Supreme Court's decision in *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002), wherein the Court held that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Wintermyer*, 571 Pa. at 203, 812 A.2d at 487.

Cmwlth.2004). It is well-established that a claimant who voluntarily retires from the work force is not entitled to workers' compensation benefits if the disability from the work injury/occupational disease has no effect on a claimant's loss of earning power. *Shannopin Mining Company v. Workers' Compensation Appeal Board (Turner)*, 714 A.2d 1153 (Pa.Cmwlth.1998).

In order for compensation benefits to continue after retirement, a claimant must show that he is seeking employment after retirement or that he was forced into retirement because of the work-related injury. *Id.* A claimant may establish through his own testimony his motivation to retire. *Capasso v. Workers' Compensation Appeal Board (RACS Associates, Inc.)*, 851 A.2d 997 (Pa.Cmwlth. 2004). Moreover, the fact that a claimant is not yet diagnosed with an occupational disease at the time of his retirement does not preclude an award of benefits, especially where the claimant exhibited symptoms of the disease prior to retirement and these symptoms did in fact cause claimant to retire. *Shannopin Mining Company.*

Employer raises two issues in the course of this argument. First, Employer argues that the WCJ erred by failing to reconcile inconsistencies in Claimant's testimony regarding his reasons for retirement, thereby rendering the WCJ's decision not reasoned. Employer argument in this regard is premised upon Claimant's testimony at the first hearing in this case, wherein Claimant indicated on cross-examination that even if he was physically capable, he would not have continued working after he reached age 65.

At a later hearing, Claimant explained that he was confused by that question and that his response to that question meant that he had no plan on continuing with his pre-retirement work inside brick ovens after reaching age 65. *See* R.R. at 60a. To the contrary, Claimant testified that he did indeed plan on working after age 65, "brick laying," working outside "on houses" or working "any kind of job that [his] breathing would allow [him] to do." (R.R. at 61a–62a).

In its brief to this Court, Employer itself notes that when a witness offers inconsistent testimony, the WCJ must weigh that testimony and resolve the inconsistencies. *See Alcoa v. Workmen's Compensation Appeal Board (Huber)*, 49 Pa.Cmwlth. 152, 410 A.2d 945 (1980). The WCJ undertook such analysis in her decision, summarizing the testimony presented by Claimant at both of the aforementioned hearings and finding said testimony to be competent, credible and "internally consistent." (WCJ's Decision, Finding of Fact No. 8(a)). Thus, we cannot say that the WCJ erred by failing to reconcile inconsistencies in Claimant's testimony. Nor can we say that the WCJ's decision was not reasoned.

Second, Employer contends that the evidence of record fails to establish that Claimant was forced to retire due to a work injury or disease. At the hearings before the WCJ, Claimant himself testified that his breathing problems began to worsen in the early 1990's, making it difficult to perform his job, which ultimately led to his retirement in May of 1996. Admittedly, at the time of his retirement, Claimant had not yet been diagnosed with any injury or disease attributable to his employment. However, as noted above, the fact that Claimant was unaware that he suffered from silicosis and asbestosis at the time of his retirement does not preclude an award of benefits. *Shannopin Mining Company.*

Similar to the claimant in *Shannopin Mining Company*, Claimant here exhibited symptoms of the disease at the time of

his retirement and he credibly testified that he retired because of his breathing problems. As in *Shannopin Mining Company*, such testimony supports the WCJ's finding that Claimant was forced into retirement by his occupational disease and we will not disturb that finding on appeal. Thus, we cannot say that the WCJ's decision in this regard was not supported by substantial evidence.[7]

■ Next, Employer argues that the Board erred as a matter of law in concluding that Claimant's date of injury was May 10, 1996, thereby precluding it a credit in the amount of fifty percent of Claimant's Social Security retirement benefits. Again, we disagree.

As noted above, Section 204(a) of the Act provides employer with a credit in the amount of fifty percent of a claimant's Social Security retirement benefits, provided that the claimant's injury occurred on or after the effective date of the Act 57 amendments, i.e., on or after June 24, 1996. In their respective briefs to this Court, the parties acknowledge that the courts have fashioned two different rules for establishing the date of injury in occupational disease cases. Under the first rule, for purposes of fixing liability against an employer, the date of injury is the date of disability. In this case, there is no dispute that the Claimant's date of disability was April 11, 2000.[8]

Under the second rule, relating to the calculation of a claimant's workers' compensation benefits, the date of injury is the date of last exposure. In this case, there is no dispute that the Claimant's date of last exposure was his last day of work on May 10, 1996.[9] As the credit is more akin to the calculation of benefits, the Board held the second rule to be more applicable in the present case, thereby precluding a credit to Employer. The Board further noted the humanitarian nature of the Act and that borderline interpretations of the Act are to be construed in the injured party's favor. *See Hannaberry HVAC v. Workers' Compensation Appeal Board (Snyder, Jr.)*, 575 Pa. 66, 834 A.2d 524 (2003). We cannot say that the Board erred in reaching this conclusion.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 27th day of September, 2004, the order of the Workers' Compensation Appeal Board is hereby affirmed.

---

7. In the course of this argument, Employer cites to a lack of testimony regarding Claimant's search for work following his retirement. However, such testimony would be unnecessary in this case as the WCJ accepted the testimony of Claimant as credible that he was forced into retirement due to his breathing problems which, in turn, resulted from his work with Employer. In addition, in the course of this argument, Employer relies heavily upon our Supreme Court's decision in *Republic Steel v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994), which it argues is factually similar to the present case. Employer's reliance is misplaced as the present case is factually distinguishable from *Republic Steel*. In *Re-*

*public Steel*, the claimant specifically testified that he retired in 1981 due to employer's closing of the facility at which he worked. In that case, there was no evidence presented regarding any alleged breathing problems or claimant's inability to work because of the same. Rather, it appears that the claimant's problems in that case did not manifest themselves until four years after his voluntary retirement.

8. Employer would be entitled to the Social Security retirement credit under this analysis.

9. Employer would not be entitled to the Social Security retirement credit under this analysis.