Lackawanna Refuse Removal, Inc. and Northeastern Land Development Company, Petitioners v. Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

Argued February 5, 1982, before Judges ROGERS, MACPHAIL and DOYLE, sitting as a panel of three.

*Thomas P. Kennedy,* with him *Francis J. Wormuth, Kennedy, Hodin & Wormuth,* for petitioners.

*Peter Shelley,* Assistant Counsel, for respondent.

OPINION BY JUDGE ROGERS, March 18, 1982:

Lackawanna Refuse Removal, Inc. held a solid waste management permit issued by the Pennsylvania Department of Environmental Resources (DER) for a sanitary landfill in Lackawanna County. Northeastern Land Development Company owns the land on which the landfill operation was located and operated the landfill for Lackawanna Refuse. Peter Iacavazzi, Sr. is the president, chief executive officer and majority shareholder of both Lackawanna Refuse and Northeastern Land.

On March 2, 1979, DER suspended Lackawanna Refuse's permit and ordered Lackawanna to cease operation of the landfill. The action was the result of an investigation conducted by DER which indicated that the operator had accepted for disposal in the landfill hazardous and toxic wastes in violation of the permit. DER followed this action by order made August

13, 1979 which required both Lackawanna Refuse and Northeastern Land to construct and operate a leachate collection and treatment facility at the landfill.

Lackawanna Refuse and Northeastern Land appealed both orders to the Environmental Hearing Board (EHB) which affirmed them. This appeal followed and we affirm.

The record of hearing conducted by EHB contains the following evidence: Lackawanna Refuse's solid waste permit provided, *inter alia*, (1) that only residential and commercial garbage and refuse might be disposed of at the landfill, (2) that the hazardous wastes might not be disposed of at the landfill and (3) that the permittee would implement a leachate collection system proposed in its application within 60 days of DER notification.

DER analyzed the leachate outflow from Lackawanna's sanitary landfill and found that it contained many chemical substances including known and suspected carcinogens. Dr. Samuel L. Rotenberg, an environmental physiologist and environmental toxicologist adduced his expert opinion that based on the analysis of the leachate it contained material hazardous to the public health and the environment. Hydrological testing showed that the leachate from the landfill flowed directly into the St. John's Creek, a tributary of the Lackawanna River.

Several truck drivers, testified that with Iacavazzi's approval they dumped numerous 55-gallon drums, barrels and the contents of tank trucks into the landfill. The drums so disposed of were marked "hazardous," "poison," "flammable," or with a death's head. Deliveries were made at night. The drivers were required to call Iacavazzi just before entering the landfill for approval to proceed and were instructed to turn off their lights as they left the main road and approached the landfill. The drivers testified that dur-

ing and following their deliveries to the landfill they experienced headaches, shortness of breath, eye irritation, and faintness from which they continue to suffer.

Based on this and much other compelling evidence in the record, EHB found that 11,550 drums, some tank cars, and many barrels of industrial wastes, some bearing the warnings and symbol just described were dumped in Lackawanna's sanitary landfill; that chemical analysis of the leachates emanating from the landfill revealed the presence of many chemicals not found in breakdown products of the kind of waste Lackawanna was under its permit authorized to dispose of; that three of these chemicals are known carcinogens and six suspected carcinogens; that these materials dumped in the landfill which contained these chemicals constituted hazardous wastes; and that there was a direct route from a pond of leachate at the sanitary landfill to a tributary of the Lackawanna River.

The petitioners' characterize their argument based on the evidence on the record as one attacking EHB's findings as not supported by substantial evidence. In fact they quarrel only with the weight of the evidence —a matter exclusively for EHB. The petitioners first fault DER for not having made tests of the materials in the few drums which had been exhumed before the EHB hearings but which the DER on the ground of safety declined to break into on the site. The petitioners say that the failure to make tests of the contents of a few drums somehow produces an absence of any evidence of illegal dumping. Of course, this is not so. The clandestine circumstances of the dumping, the legends on the drums, the symptoms of the drivers, and the presence of carcinogenic chemicals in the leachate amply prove that habardous wastes were placed in the petitioners' landfill. Even a judgment of sentence for first degree murder may be founded on

wholly circumstantial evidence. *Commonwealth v. Holzer,* 480 Pa. 93, 98, 389 A.2d 101 (1978). In the same vein, the petitioners complain of the admission into evidence of the anlysis of the leachate samples because DER's chemist was unable to identify the person in his laboratory who instructed the computer to record that the legal seals of the samples were intact, the suggested inference being that there was no proof that the seals were intact when the samples came to the laboratory. This simply is not so. The chemist in charge of the laboratory testified that he personally examined the seals of the samples delivered to the laboratory and that they were intact. Further, although resort to exculpatory principles is not needed in this case, we note that physical evidence may be admitted despite gaps in the testimony regarding its custody. *Commonwealth v. Bolden,* 486 Pa. 383, 406 A.2d 333 (1979).

Next the petitioners seem to argue that the results of the tests of the leachate should not have been admitted because DER disposed of the samples after the testing. The petitioners base their argument in this regard on Pa. R.C.P. No. 4009 requiring parties on request to produce documents and other things for inspection and on Pa. R.C.P. No. 4019 which provides sanctions for failure to produce such matters, including, at the discretion of the trier, the exclusion from evidence of things requested and not produced. This thesis is wholly without merit because the petitioners never requested the production of the samples. Furthermore, they could have made their own tests of leachate emanating from their landfill if they desired.

The petitioners advance a number of other arguments which we mention briefly. They say that EHB was required to find that the operation of the landfill constituted a public nuisance; and that the Commonwealth was estopped by laches from enforcing the

statutes because it had earlier authorized the dumping of hazardous wastes or had reports that such was happening and failed to investigate in timely fashion.

The DER's orders were issued on the authority of Section 6 of the Pennsylvania Solid Waste Management Act, Act of July 31, 1968, P.L. 788, *as amended,* 35 P.S. §6006, then applicable, which authorized the issuance of orders necessary to implement that Act and by Section 316 of the Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended,* 35 P.S. §691.316, authorizing orders in correction of pollution or dangers of pollution of Commonwealth waters. Neither of these acts require a finding of a public nuisance as the precondition of the DER order or EHB's affirmance thereof.

With respect to the argument that DER is somehow estopped by its asserted earlier authorization of or failing to investigate illegal dumping at the landfill from now moving against the petitioners, the record is barren of any evidence that the DER at any time sanctioned the dumping of hazardous wastes or that it was given sure information of their presence on the site. Further, in enforcing these environmental enactments DER is exercising a governmental function, so that even had its agents been mistakenly indulgent or lax in enforcing the laws, DER cannot now be prevented from performing its duty of enforcing the statutes. *Commonwealth v. Western Maryland R.R. Co.,* 377 Pa. 312, 105 A.2d 336 (1954). *See also Commonwealth of Pennsylvania, Department of Public Welfare v. UEC, Inc.,* 483 Pa. 503, 516, n. 6, 397 A.2d 779, 785, n. 6 (1979).

Order affirmed.

ORDER

AND Now, this 18th day of March, 1982, the order of the Environmental Hearing Board is affirmed.