Burton K. Sipp, Petitioner *v.* Commonwealth of Pennsylvania, State Horse Racing Commission, Respondent.

Argued September 12, 1983, before President Judge CRUMLISH, JR. and Judges BARRY and BLATT, sitting as a panel of three.

*Joel Weisberg,* with him *Edward J. Holden,* for petitioner.

*Gerald T. Osburn,* with him *Victor S. Jaczun,* Special Counsel, for respondent.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., October 17, 1983:

Burton Sipp appeals an order of the State Horse Racing Commission (Commission) which suspended his racing privileges for sixty days and imposed a fine of $1,000.

Sipp was the trainer of the horse "Katayeff." Lidocaine[1] was found in a urine analysis. Lidocaine is a local anesthetic not naturally found in horses.

Following a Commission hearing, an order was entered suspending Sipp for sixty days and imposing a $250 fine. A rehearing was held eight months later.

Section 163.302 of Title 58 of the Pennsylvania Code provides, in pertinent part:

It shall be the intent . . . of this title . . . to protect the integrity of horse racing . . . and to safeguard the interests of the public and the racing participants. . . . In this context:

---

[1] 305 nanograms per milliliter.

(1)   No horse participating in a race shall carry in its body any substance foreign to the natural horse. . . .

Section 163.303 of Title 58 of the Pennsylvania Code provides, in pertinent part:

(b)   A finding by the Chemist that a foreign substance is present in the test sample shall be prima facie evidence that such foreign substance was administered and carried in the body of the horse while participating in a race . . . [and] that the trainer . . . of the horse . . . may have been negligent in the handling or care of the horse. (Emphasis deleted.)

The trainer has a positive duty to protect his horses from the administration of any prohibited drug. *Bellucci v. State Horse Racing Commission*, 66 Pa. Commonwealth Ct. 631, 637, 445 A.2d 865, 869 (1982).

Sipp argues that the weight of the evidence does not support a finding of responsibility.[2] He asserts that no evidence was introduced to contradict his contention that the lidocaine was administered, as part of a treatment for an abcessed foot,[3] seven days earlier

_____

[2] The scope of our review under Section 704 of the Administrative Law and Procedure, 2 Pa. C. S. §704, requires us to affirm the adjudication of the Commission unless it is in violation of the constitutional rights of the appellant, in violation of the law, or that any finding is not supported by substantial evidence. *Marcuso v. Pennsylvania State Horse Racing Commission*, 68 Pa. Commonwealth Ct. 19, 21, 448 A.2d 662, 663 (1982).

[3] A veterinary doctor had examined the horse on April 22, 1979, and diagnosed a subsolor abcess. He prescribed a treatment of penicillin, tetanus, and the pulling of the shoe and cutting out a pus pocket. He further authorized Sipp to apply a topical ointment and understood that Sipp did use such an ointment known as "topiderm" creme which has a one-percent content of lidocaine. The doctor instructed Sipp not to race the horse for at least three days and preferably for seven days after the last application of the ointment. Sipp claims that he did in fact wait seven days after the last application before running the horse.

under a veterinarian's order. This argument is without merit.

The Commission found that the drug lidocaine is a fairly rapidly metabolizing drug[4] and that the lidocaine found in this animal was in a non-metabolized state. Considering this evidence, the Commission concluded that lidocaine was most likely applied to the horse within twenty-four hours of the race.

In *Hacker v. Pennsylvania Horse Racing Commission*, 46 Pa. Commonwealth Ct. 263, 405 A.2d 1379 (1979), we said that the purpose of the Commission's promulgation of the rule prohibiting the presence of any foreign substance

> was to eliminate any of the prohibited drugs in order to ensure the integrity of the race and the confidence of the public in the fairness of races. Thus, it is not the quantity or type of the drug ... that is relevant ... rather it is the presence of any drug that is sought to be avoided.

*Id.* at 266, 405 A.2d at 1381.

We hold that the imposition of liability was proper.

Sipp further argues that a failure to have presented to the Commission a confiscated "trainer's chart" was denial of due process. This contention is also without merit. Subpoenas were issued to the Commission and local track officials ordering the production of the chart, but written statements were received acknowledging that the chart had been lost.[5]

---

[4] The Commission stated:

6. Dr. Soma testified that if the drug lidocaine had been absorbed through application of the medication "Topiderm" through the hoof of the horse seven days before the race in question, the total amount of lidocaine which might be found in the body of a horse would be gone before the race seven days later.

[5] The hearing officer of the first adjudication, after noting Sipp's concern of the lost chart, stated:

Lastly, Sipp argues that the penalty imposed is excessive. At rehearing, the Commission concluded that additional evidence had demonstrated, more clearly, Sipp's culpability, justifying a severe penalty.[6] The Commission has not abused its discretion in imposing a greater penalty after considering the additional evidence that the horse had received a much higher dosage of the medication within a much more proximate time than has been claimed.

Affirmed.

### ORDER

The order of the Pennsylvania State Horse Racing Commission, No. 79-069, dated March 23, 1981, is hereby affirmed.

---

[I]t appears, therefore, that the Applicant's explanation of the precautions he took to remove the horse from the medication cannot be accurate. This conclusion would not be affected by the production of Appellant's training chart, a generally self-serving document.

[6] Under Sections 325.213 and 325.214 of the Race Horse Industry Reform Act, 4 Pa. C. S. §§325.213, 325.214, the Commission has the power to suspend a license and impose a fine up to $5,000 for a violation of its promulgated rules.