514 A.2d 311

William E. Worthington, Petitioner *v.* Commonwealth of Pennsylvania, Department of Agriculture, State Horse Racing Commission, Respondent.

Argued May 12, 1986, before Judges MACPHAIL and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*John B. Lampi,* with him, *Nicholas Bybel, Jr., Shumaker and Williams,* for petitioner.

*John Wm. Schreck,* with him, *John B. Hannum, Jr.,* for respondent.

OPINION BY SENIOR JUDGE BARBIERI, August 29, 1986:

William Worthington, trainer of the horse Duke Leon, appeals here the adjudication and order of the Pennsylvania State Horse Racing Commission imposing a sixty day suspension of Worthington's racing privileges due to the positive finding of the prohibited substance Acepromazine in a urine sample obtained from Duke Leon after the fifth race in which he placed second at Keystone Race Track on June 27, 1982.

Rule 15.02(1) of the Rules of Racing, 58 Pa. Code §163.302(a)(1), prohibits any horse participating in a race from carrying in its body any foreign substance with certain exceptions not pertinent in the instant case.[1] After hearing, at which Worthington and three witnesses on behalf of the Commission appeared and testified, the Commission found that the blood and urine samples extracted from Duke Leon after the fifth race June 27, 1982 at Keystone indicated the presence of the prohibited drug, Acepromazine, and that the split sample sent to the University of Kentucky's laboratory at Worthington's request[2] also tested positive for Acepromazine. Although the Commission specifically found that Worthington did not cause the substance to be administered to Duke Leon by his veterinarian, responsibility for the presence of the drug in the horse was assigned Worthington pursuant to 58 Pa. Code §163.309 which charges trainers with the obligation to guard the horse against the administration of any drug and 58 Pa. Code §163.303(b) which provides that a finding that a foreign substance is present in the test sample shall be *prima facie* evidence that the trainer and his agents responsible for the care or custody of the horse may have been negligent in the handling or care of the horse. *See Sipp v. Pennsylvania State Horse Racing Commission*, 77 Pa. Commonwealth Ct. 561, 466 A.2d 296 (1983).

Worthington first argues before this Court, as he did before the Commission, that he was prejudiced by the

---

[1] *See* 58 Pa. Code §163.304.

[2] 58 Pa. code §163.318(c) provides:

(c) Upon application by the trainer or owner of the horse in question, the split portion of the sample taken shall be tested by a laboratory designated by the Commission and approved by the Horsemen's Benevolent and Protective Association.

twenty-one month delay between the date he was notified of the positive finding and the date of the hearing. Worthington had filed a motion to dismiss with the Commission pursuant to 58 Pa. Code §165.189 which permits the Commission, in its discretion, to dismiss cases pending more than four months before the Commission which have, due to fault or neglect, neither been duly continued nor prosecuted. The sole basis for Worthington's asserted prejudice due to delay was his inability to locate two key witnesses, grooms in Worthington's employ in June of 1982, who could offer testimony on his behalf. Worthington testified at the hearing that, although he was aware of the whereabouts of one of the grooms, he had made no effort to ensure his attendance at the hearing by subpoenaing him[3] nor had he attempted to locate the other groom. The Commission, therefore, concluded that Worthington's blanket allegation of prejudice, without more, was insufficient to cause the Commission to dismiss the charge against Worthington.

In response to Worthington's repeated assertion of prejudice to this Court, we hold that the Commission did not abuse its discretion in so denying the motion. Worthington may not benefit from a hardship which is, to a great extent, self-imposed. Certainly, if Worthington had attempted to secure both grooms' attendance at the hearing and failed his argument of prejudice would be entitled to greater weight. Worthington did not make such an attempt, however, and his argument does not convince us that the Commission abused its discre-

---

[3] Section 226 of the Race Horse Industry Reform Act, Act of December 17, 1981, P.L. 435, 4 P.S. §325.226 provides in pertinent part that the Commission may issue subpoenas in connection with hearings before the Commission to compel attendance of witnesses.

tion in denying the motion and, therefore, we will address Worthington's second argument.

Worthington's second argument attacks the evidentiary support for the Commission's findings that Duke Leon had been administered Acepromazine, a prohibited drug, on June 27, 1982, and that Worthington, his trainer, was responsible. Worthington's major complaint goes to the Commission's failure to establish the chain of custody of the blood and urine samples initially obtained at the detention barn at Keystone Race Track after the race, labelled and split, then sent to the Commission's official laboratory in West Chester, Pennsylvania for testing. Mr. Worthington argues that because none of the witnesses for the Commission could affirmatively state from personal knowledge that the samples which tested positive for Acepromazine were in fact taken from the horse Duke Leon, and because the bulk of the Commission's evidence in support of its conclusion was documentary evidence in the form of detention barn reports and laboratory results, there is no substantial evidence to support the Commission's conclusion. Mr. Worthington cites *Paoli v. Pennsylvania State Horse Racing Commission*, 81 Pa. Commonwealth Ct. 179, 473 A.2d 243 (1984) in support of his position. The facts as given and the holding in *Paoli*, that without evidence to support the Commission's finding of fact that the sample testing positive for Acepromazine was indeed procured from Paoli's horse, that portion of the Commission's order suspending Paoli because of the drug violation could not stand, do indeed seem to support Mr. Worthington's position. The applicability of 58 Pa. Code §163.315, however, was not an issue raised or discussed in *Paoli*, as it is in this case. 58 Pa. Code §163.315 provides:

> All urine or blood test reports prepared and issued hereunder by the official chemist or

chemists of the Commission shall be deemed *prima facie* correct and all steps undertaken in the collection, preservation, handling, and testing thereof shall be presumed proper and correct in the absence of affirmative proof to the contrary.

Mr. Worthington recognizes the pertinence of Section 163.315 but contends that such a rule, placing an affirmative burden of proof on the alleged violator, contradicts Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704, which requires an adjudication of a Commonwealth agency to be supported by substantial evidence. Mr. Worthington asserts that the Commission should be shouldered with the burden of affirmatively establishing every element of the charge.

Contrary to Mr. Worthington's argument, the Commission has not been relieved of its burden to establish the elements of the charge. The import of the regulation, in our view, is to simplify the Commission's burden by eliminating the necessity for the attendance at the hearing of every person involved in the procurement and the actual testing of the sample. As the following description of the procurement and testing procedure utilized in this case, as in most cases, demonstrates, the number of persons involved is significant.

Rule of Racing No. 318, 58 Pa. Code §163.318, directs that test samples of the winner of each and every race, and of all horses finishing in the money in a race for which there is exotic wagering, be obtained, that the blood or urine sample be split into two parts, that one portion be delivered to the Commission's official chemist for testing, and that the remaining portion be maintained at the detention barn for independent testing if requested. In accordance with the above regulation, as found by the Commission, after Duke Leon finished second in the fifth race at Keystone on June 27, 1982,

he was taken to the detention barn where both blood and urine samples were obtained. The urine was collected by one individual, a designated urine collector, and blood was extracted by the race track's veterinarian. Both samples were marked Sample 12609 in the presence of owner's agent whose initials appear on the sample card. The samples were split and the partial samples of blood and urine were sent to the state race horse testing laboratory. The Commission's official chemist testified from documents prepared by employees under his supervision and kept in his control that Sample 12609 along with others sent from Keystone on the same date were signed for and laboratory receipt prepared, and that Sample 12609 was subjected to a battery of tests performed by various laboratory technicians with the result that the presence of Acepromazine was detected which finding was communicated to the Commission via a laboratory report.

The regulation thus eliminates the necessity for the testimony of the urine collector, the veterinarian who collected the blood, the security guard who guards the building in which the split samples are housed, the person who delivers the samples to the official laboratory, the laboratory employee who accepts delivery of the samples, and the various technicians who perform the myriad of tests. Three essential witnesses, the Special Assistant to the Director of Enforcement for the Commission, who received the laboratory reports plus other documentary evidence and offered them into evidence, the Commission's official chemist, and the Commission's Special Investigator at Keystone familiar with the sample collection procedure at Keystone, did appear and testify. In view of the regulation, however, and the presumptions it establishes, the bulk of the testimony offered by the above witnesses was superfluous in the absence of affirmative proof by Mr. Worthington of

some error or defect in any stage in the process of procuring and testing of Sample 12609.

Also, we note that 58 Pa. Code §163.318, subsections (c) and (d), provide that verifiction by an independent laboratory of the split sample of the official laboratory's positive finding shall establish a *prima facie* violation of the above-cited regulations. Again, Mr. Worthington presented no affirmative evidence which would rebut the presumption established by 58 Pa. Code §163.318(d).

We hold that the Commission's conclusion that Worthington must be held responsible for the positive finding of Acepromazine in the blood and urine samples obtained from Duke Leon on June 27, 1982 is supported by substantial evidence. Accordingly, the Commission's suspension order will be affirmed.

### ORDER

AND NOW, this 29th day of August, 1986, the order of the Pennsylvania State Horse Racing Commission in the above-captioned matter is affirmed.

---

DISSENTING OPINION BY JUDGE COLINS:

I must vigorously dissent.

The majority's reliance on 58 Pa. Code §163.315 is misplaced. By its adoption of this regulation, the Commission has, in effect, attempted to supercede Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704, through unauthorized *fiat*. Nowhere in the legislation creating the Horse Racing Commission is there any authority for such a regulation.

The regulation in question is interpretative rather than legislative. This distinction was discussed at great length by our Supreme Court in the case of *Commonwealth v. DePasquale*, 509 Pa. 183, 501 A.2d 626 (1985). In the Court's majority opinion, Justice LARSEN noted:

> Interpretative rules cannot be binding on courts, like statutes, but courts, without being bound by them, may give them authoritative effect that equals or approximates force of law . . . When a rule is issued pursuant to delegated power, the court is bound by it as if it were a statute, and the court can do no more than inquire into its validity. But when a rule is not issued pursuant to delgated power, the court's inquiry is not into validity but is into correctness or propriety; the court may substitute judgment to whatever extent it finds desirable.

*Id.* at 187, 501 A.2d at 628-29. (quoting K.C. Davis, 2 Administrative Law Treatise §7:10 at 54, §7:13 at 59 (2d Ed. 1979)).

It is impossible, through the adoption of an interpretative regulation, for any Commonwealth agency to give itself more authority than that generally granted in the Administrative Agency Law.

In *State Board of Medical Education and Licensure v. Contakos,* 21 Pa. Commonwealth Ct. 422, 346 A.2d 850 (1975), this Court held that 2 Pa. C. S. §505, which mandates that the technical rules of evidence are not applicable to proceedings before the Commonwealth agencies, does not abrogate the hearsay evidence rule.

While the report itself in the instant matter may have qualified under the business record exception of 42 Pa. C. S. §6108, there is absolutely no competent evidence of record to indicate that the subject of the report, sample number 12609, was, in fact, taken from the horse, Duke Leon, on the day in question. The sample was not taken by the laboratory which prepared the report. Therefore, the chain of custody must be independently proven before the report may be admitted. The documents stating the source of the sample, without verification, are merely out-of-court hearsay statements.

*See Beard v. Department of Public Welfare,* 42 Pa. Commonwealth Ct. 393, 400 A.2d 1342 (1979); *Alcoa v. Workmen's Compensation Appeal Board,* 49 Pa. Commonwealth Ct. 152, 410 A.2d 945 (1980).

In *Bleilevens v. Pennsylvania State Civil Service Commission,* 11 Pa. Commonwealth Ct. 1, 5, 312 A.2d 109, 111 (1973), Judge ROGERS of this Court wrote: "The Hearsay Rule is not a technical rule of evidence but a basic, vital and fundamental rule of law which ought to be followed by administrative agencies at those points in their hearings when facts crucial to the issue are sought to be placed upon the record." In the instant matter, the majority has apparently chosen to abandon this long-standing doctrine.

The effects of a 60-day suspension upon a trainer of Mr. Worthington's stature are disastrous; yet, this Court has chosen to affirm the Agency's suspension of Mr. Worthington's license to practice his livelihood without requiring the Commission to affirmatively establish every element of the charge. There are numerous exceptions to the Hearsay rule which would have allowed proof of the chain of custody of the evidence in question, while only placing a minimal burden upon the Commission. However, the Commission chose not to lay a proper foundation for the admission of the evidence in question, and as such, it should have been excluded.

The State Horse Racing Commission has proven itself to be exemplary in its management, promotion, and regulation of the horse racing industry in Pennsylvania. However, there is no legislative authority to allow the Commission to enjoy a lesser burden of affirmative proof in its administrative hearings than any other Commonwealth administrative agency.

In its decision in the instant matter, and the similar case of *Wise v. Pennsylvania State Horse Racing Commission,* 100 Pa. Commonwealth Ct. 205, 514 A.2d 308

(1986), this Court has chosen to overrule *Paoli v. Pennsylvania State Horse Racing Commission*, 81 Pa. Commonwealth Ct. 179, 473 A.2d 243 (1984), eviscerate *Bleilevens* and by implication bypass the Uniform Business Records as Evidence Act, 42 Pa. C. S. §6108, and empower the State Horse Racing Commission with regulatory control enjoyed by no other agency.

Accordingly, I must dissent.