514 A.2d 308

Charles Wise, Robert Carnival and Marilyn Jeff, Petitioners *v.* Commonwealth of Pennsylvania, Pennsylvania State Horse Racing Commission, Respondent. ·

Submitted on briefs May 15, 1986, to Judges MAC-PHAIL and DOYLE, and Senior Judge ROGERS, sitting as a panel of three.

*Ronald A. Kovler, Ronald A. Kovler, P.C.,* for petitioners.

*John B. Hannum, Jr.,* with him, *John Wm. Schreck,* for respondent.

OPINION BY SENIOR JUDGE ROGERS, August 29, 1986:

A petition, nominally in behalf of Charles Wise, Robert Carnival and Marilyn Jeff (or Leff), has been filed for review of an order of the State Horse Racing Commission. Mr. Wise was the trainer of the horse Chief Steward which won the eighth race at Keystone Race Track on June 2, 1984. Robert Carnival and Marilyn Jeff were the owners of Chief Steward. Wise's trainer's license was suspended by the Commission's order which is the subject of this appeal. That order merely recites that Carnival and Jeff were the owners of the horse; it imposes no penalty or sanction whatsoever upon either of them. Nevertheless, in addition to trainer Wise, owners Carnival and Jeff are named as petitioners in the petition for review. For this reason, the names of Carnival and Jeff appear in the caption of this appeal although neither the petition for review nor the briefs state any objection by them to the order which is the

subject of this opinion. In any event, the order appealed suspended Wise's trainer's license for sixty days on the basis of a positive finding of the drug Phenylpropanolamine in Chief Steward after his winning race.

After its hearing, the Commission made the following pertinent findings of fact:

1. The appellant is Charles Wise, an adult individual licensed by the Pennsylvania State Horse Racing Commission as a trainer.

2. Charles Wise trained the horse Chief Stewar[d] on June 2, 1984.

3. Chief Stewar[d] placed first in the eighth race on June 2, 1984.

4. The horse Chief Stewar[d] was owned by Robert Carnival and Marilyn Leff.

5. On the date of the race, the horse Chief Stewar[d] was taken to the detention barn, and blood and urine were extracted from the horse. The samples were tagged and identified as Sample Nos. 24425.

6. A split sample was requested, and that split sample was sent to the New York State College Veterinarian Medicine, at one drug testing program in Ithica [sic], New York with a request that it be tested for Phenylpropanolamine.

. . . .

8. After urine and blood samples are taken from the horses, in the detention barn, the person who takes the sample in front of witnesses, seals the sample, identifies the sample and places the sample in the refrigerator which is located in the detention barn. During the testing process in the detention barn, the owner, or trainer, or the appointed agent of the owner or trainer is able to witness the extraction, packaging, and labeling of the samples. During the test

procedures at the detention barn the trainer or owner must have a representative present.

9. The foreman, or a farmworker ii has the key to the refrigerator, and the access to the refrigerator is limited to Commission personnel. The split sample is frozen, and the blood samples are separated.

10. Once the samples are in the refrigerator, the samples are placed in a lock container which is kept in the refrigerator.

11. There are no overnight guards in the detention barn.

12. There is no overnight guard kept on the detention barn refrigerators.

13. The lockbox with the appellant's sample in it was delivered to the Pennsylvania State Race Horse Testing Laboratory at West Chester, and no broken seals, or other 'tampering' was noted.

14. Test Sample 24425 was subjected to initial screening.

15. Subsequently, it was subjected to two dimensional thin layer chromatography. Subsequent to the results of that test indicating the presence of a foreign body or matter in the urine, further urine was subjected to gas chromatograph and mass spectrolysis. This test confirmed the presence of Phenylpropanolamine in the test sample. Subsequent to the termination of testing involving this sample, whatever portion of the urine sample that remained was maintained at the testing laboratory.

. . . .

17. The notice of positive finding was transmitted to the Commission and to the track. The owner indicated that he wished to have a split sample tested.

The Commission's order, captioned in Wise's name alone, suspended his trainer's license.

Wise principally contends that there is no competent evidence showing that samples of Chief Steward's blood and urine were taken at the detention barn, or if taken, that such were identified or sent for laboratory testing because no one who was present at the detention barn at the time the alleged samples were allegedly taken testified at the hearing. Based upon the same asserted lack of evidence, the petitioner contends that no chain of custody of the samples from the horse to the laboratory has been established.

It is true that no one present at the detention barn when the samples were taken testified. It is not true that there is not competent evidence in the record that the samples were taken on that occasion and sent for testing. Mr. Roger D. Marciano, Director of Enforcement for the Commission, testified, over the objection of petitioner's counsel, as to the procedures required to be followed by persons under his supervision for taking samples at the detention barn; that these were that the subject horse is brought to the barn, a urine sample is collected in the presence of the trainer, or an authorized representative, it is split, and then sealed for storage; that a state veterinarian draws a blood sample, also in the presence of the trainer or his representative, which is sealed, then spun down for storage; that the trainer or representative is then given the opportunity to examine the sealed containers to assure that the number on the seal matches the number on an identification tag which is attached to each sample; that the samples are not left unattended while they are being prepared for storage; that a security officer is present when the samples are taken; and that only authorized Commission personnel have access to the refrigerator where the samples are stored.

The petitioner's objections to Mr. Marciano's testimony were stated in terms of hearsay, but were, we believe, properly overruled. Mr. Marciano was not testifying as to what happened at the detention barn at the time Chief Steward's samples were allegedly taken; he was describing the procedures required to be followed when samples are collected. His testimony included information which he learned from a detention barn report, which noted the horses from whom samples were taken on the day Chief Steward won his race, the time the samples were taken and the identity of the collector, and from the identification tag attached to the samples which trainers are required to sign and which in this case bears a signature on the line marked "witness" "C. G. Wise." The report and identification tag were properly admitted into evidence pursuant to the Uniform Business Records as Evidence Act, 42 Pa. C. S. §6108.

The report, the identification tag, and the Chief Steward samples all bore the number 24425. As we will see later, although the hearing was continued so that Wise might testify, he was not produced so that neither his testimony nor any other evidence was produced in rebuttal of the strong inference raised by this evidence that Wise was present at the detention barn, witnessed the samples taken, their sealing, and their identification by number.

The testing of the samples at the Horse Testing Laboratory in West Chester, Pennsylvania, was done by a chemist, Mr. Frank Railing, who testified that he personally received and tested the Chief Steward samples numbered 24425 and that the seals on the samples were intact when he opened them and made the test unfavorable to the petitioner. Mr. Railing's report, which was received in evidence, contained no notations suggesting tampering, which he testified it would have borne if that had been the case.

The absence of direct testimony regarding the taking of Chief Steward's samples and their custody at the detention barn does not preclude their admission into evidence. The law is that physical evidence may be admitted despite the presence of gaps in the chain of its custody. *Lackawanna Refuse Removal, Inc. v. Department of Environmental Resources,* 65 Pa. Commonwealth Ct. 372, 442 A.2d 423 (1982). Gaps in the chain of custody go to the weight to be given to the testimony, not to its admissibility. *Commonwealth v. Bolden,* 486 Pa. 383, 406 A.2d 333 (1979).

In *Worthington v. Pennsylvania State Horse Racing Commission,* 100 Pa. Commonwealth Ct. 183, 514 A.2d 311 (1986) we affirmed an order of the Commission suspending a trainer's license in circumstances similar to those of this case based upon a Commission regulation at 58 Pa. Code §163.315 according *prima facie* correctness to urine and blood test reports. The regulation was not relied upon by the Commission in this matter but we are constrained to say here, as we did in *Worthington,* that the effect of the regulation is to eliminate the necessity for the attendance at the hearing of every person involved in the procurement and testing of the sample.

In *Worthington* the trainer cited the case of *Paoli v. Pennsylvania State Horse Racing Commission,* 81 Pa. Commonwealth Ct. 179, 473 A.2d 243 (1984). In that case, in which again the regulation at 58 Pa. Code §163.315 was neither cited nor relied upon by the Commission, a panel of this court held that in the absence of any evidence that the samples were taken from the trainer's horse, an order suspending the trainer could not stand. The facts of the case *sub judice* are quite different from those of *Paoli.* Here there *is* evidence that the sample was taken from Mr. Wise's horse in the fact of the signature C. Wise on the identification tag attached to the sample.

212

At the conclusion of the Commission's hearing herein the petitioner's counsel requested and received a continuance so that he might at a later hearing produce the results of additional tests taken of Chief Steward's samples and for the receipt of petitioner Wise's testimony. No continued hearing was requested and the Commission handed down its order six months after the first hearing.

The evidence supports the Commission's findings and its order.

Order affirmed.

ORDER

AND NOW, this 29th day of August, 1986, the order of the Pennsylvania State Horse Racing Commission in the above-captioned matter is affirmed.

Judge COLINS did not participate in the decision of this case.