548 A.2d 659

John B. Luzzi, Jr., Petitioner *v.* Commonwealth of
Pennsylvania, State Horse Racing Commission, Re-
spondent.

216

*Robert P. Fulton,* for petitioner.

*John B. Hannum, Jr.,* for respondent.

OPINION BY JUDGE PALLADINO, October 5, 1988:

John B. Luzzi, Jr. (Petitioner) appeals from two orders of the State Horse Racing Commission (Commission) issued on April 21, 1987.[1] One order affirmed Petitioner's ejection by the Philadelphia Park Race Track (Race Track) from its grounds. The second order affirmed the decision of the Board of Stewards (Stewards) to suspend Petitioner's apprentice jockey license but permitted relicensure to be sought upon satisfacto-

---

[1] Petitioner filed one document in this court with respect to these two orders. The document was titled "Petition for Review of Adjudications and for Supersedeas Pending Review." The supersedeas requests were denied July 31, 1987.

Taking one appeal from two adjudications is not acceptable practice and could result in the appeal being quashed. *General Electric Credit Corp. v. Aetna Casualty and Surety Co.,* 437 Pa. 463, 263 A.2d 448 (1970). However, the Supreme Court in *General Electric* indicated that one appeal from more than one final order may be considered on the merits if the circumstances lead the reviewing court to the conclusion that the merits should be reached. *Accord Turtzer v. Unemployment Compensation Board of Review,* 111 Pa. Commonwealth Ct. 549, 534 A.2d 848 (1987). The circumstances in the instant case are similar to those which led the Supreme Court in *General Electric* to consider the merits and we conclude that the merits should be reached. The circumstances which convince us are: nearly identical issues, no objection to only one appeal, and expiration of the appeal period.

ry completion of a rehabilitation program approved by the Commission. We affirm both orders.

Petitioner was licensed as an apprentice jockey by the Commission. On October 31, 1986, he was searched, while on the Race Track grounds, by personnel from the Thoroughbred Racing Protective Bureau (TRPB), who were acting on order of the Stewards. During the search, Petitioner removed two straws from his right rear pocket which were placed in a ziplock plastic bag and sent to the Pennsylvania State Horse Testing Laboratory (Lab). On November 2, 1986, at the request of the Stewards, Petitioner submitted to a physical exam by the Race Track's physician, Dr. McKill, who determined that Petitioner, at that time, was not under the influence of drugs and fit to ride. Petitioner also provided a urine sample on that date which was placed into a sealed container in Petitioner's presence and then sent to the Lab.

Lab tests performed on the material in the straws showed that material to be cocaine. Tests performed on the urine disclosed the presence of benzoylecgonine, the primary metabolite of cocaine, which indicates past usage of cocaine.

As a result of the test showing cocaine in the straws, Petitioner was ejected by the Race Track from its grounds on November 8, 1986. His ejection was pursuant to section 215(c) of the Act of December 17, 1981 (Act), P.L. 435, *as amended*, 4 P.S. §325.215(c). Section 215(c) states, in pertinent part:

A licensed corporation may . . . eject from the enclosure of the race track operated by the corporation, any person licensed by the [Commission], employed at this occupation at the race track, whose presence there is deemed detrimental to the best interests of horse racing, citing the reasons for that determination.

The reason given for Petitioner's ejection was possession of cocaine.

Petitioner filed with the Commission a demand for a hearing on his ejection within 48 hours as required by 58 Pa. Code §165.231(c).[2] Petitioner was not permitted to ride at the Race Track after November 8 as a result of his ejection.

The Stewards, upon receipt of the results of the tests from the Lab, notified Petitioner that a hearing would be held December 11, 1986 to determine if his jockey license should be suspended.[3] On December 15, 1986, the Stewards issued a decision in which they suspended Petitioner's license for violating 58 Pa. Code §§163.8(1) (under the influence of liquor or drugs while on racetrack grounds), 163.8(2) (possession of illegal drugs), 163.58 (experience, character, or general fitness inconsistent with public interest or best interests of racing),

---

[2] This regulation states, in pertinent part:
The notice shall advise the ejectee that he shall have a right to demand a hearing upon the ejection if written demand for the same is served upon the association in question and is received by the executive offices of the Commission no later than 48 hours following receipt by the ejectee of the notice confirming ejection. If an ejectee shall timely file a demand for a hearing, the hearing shall be scheduled within 48 hours of the time of receipt of the demand or as soon thereafter as possible. . . .

[3] The Stewards have extensive powers in matters pertaining to horse racing, which are set out in 58 Pa. Code §163.340. The power to suspend appears in 58 Pa. Code §163.340(f) which states:
The stewards may suspend a person or disqualify a horse for fixed periods of time or for such time or times or under such conditions they may deem appropriate or as may be specified by the provisions of this chapter. In the event any person is indefinitely suspended or is ordered suspended for more than the balance of a meeting, such matters shall promptly be referred to the Commission for final disposition.

163.471[4] and section 213(f)(2) of the Act[5] as a result of his possession and use of cocaine. Petitioner appealed this decision to the Commission.

De novo hearings on the ejectment and suspension were held by the Commission on January 13, 1987. The record made in the ejectment hearing, which dealt primarily with the discovery of the straws and their contents, was incorporated, by stipulation, into the record made in the suspension hearing. Commission regulations require the Commission to issue a written order within 30 days of a hearing. 58 Pa. Code §165.184(a). During the hearing, the hearing examiner requested

---

[4] This section, in pertinent part, states:

Whenever the Commission, Stewards, Starter, or any authorized official acting under this chapter, finds any person or licensee to have been guilty of any act or omission in violation of either the letter or spirit of this chapter, or any act or omission not covered specifically by this chapter but deemed to require disciplinary action, or any violation of the act or its amendments, the person or licensee shall be subject to such disciplinary action as the Commission or Stewards shall deem commensurate with the offense committed. Said disciplinary action may take the form of a fine, suspension, fine and suspension, revocation of license, or the ruling off for life. All fines imposed shall not exceed the provisions of the Act.

58 Pa. Code §163.471(a).

[5] This section states:

The commissions [State Horse Racing Commission and State Harness Racing Commission] may suspend, refuse to renew or revoke a license issued under this section, if it shall determine that:

. . .

(2) That the experience, character or general fitness of any applicant or licensee is such that the participation of the person in horse racing or related activities would be inconsistent with the public interest, convenience or necessity or with the best interests of racing.

4 P.S. §325.213(f)(2).

Petitioner's leave to extend this period. Petitioner refused. On February 10, 1987, the Commission issued an order stating that it would not be issuing an adjudication until later because it had yet to receive the notes of testimony. The Commission issued an adjudication in both matters on April 21, 1987. The ejection was affirmed. The suspension of Petitioner's license was affirmed with a modification that he would be eligible for relicensure upon successful completion of a rehabilitation program approved by the Commission.

On appeal to this court,[6] Petitioner raises the following issues: (1) was the suspension "prior to a hearing, argument and a determination by the reviewing entity" a violation of the Pennsylvania and U.S. Constitutions' guarantees of due process; (2) were the Act and the regulations issued pursuant to it violated by the delay in holding a Commission hearing and issuing an adjudication on the ejection and on the suspension; (3) was the search which disclosed the straws an illegal search and seizure, violative of the Pennsylvania and U.S. Constitutions, because it was done without a warrant; (4) does the use of the Lab, established to do tests on horses, to perform the tests on Petitioner's urine and the material in the straws invalidate the test results; (5) was the "chain of custody" of the straws established; (6) was the evidence sufficient to sustain the suspension. Because Petitioner has raised and preserved these issues before the Stewards, the Board and this court, we will address each issue separately.

---

[6] Our scope of review of an adjudication of the Commission is limited to determining whether necessary findings of fact are supported by substantial evidence, an error of law has been made or Petitioner's constitutional rights have been violated. *Sipp v. State Horse Racing Commission*, 77 Pa. Commonwealth Ct. 561, 466 A.2d 296 (1983).

## I. DUE PROCESS

Petitioner contends he was denied due process because he was deprived of a property right, his jockey license, without a hearing before the Commission. This contention is without merit.

The essential elements of due process required in the context of administrative action when a property right is involved[7] are "notice of government action and an opportunity to be heard to challenge that action." *Barasch v. Pennsylvania Public Utility Commission*, 119 Pa. Commonwealth Ct. 81, 101, 546 A.2d 1296, 1305 (1988). Petitioner, *prior* to having his jockey license suspended, was given notice and an opportunity to challenge the suspension in a hearing before the Stewards.[8] Petitioner does not dispute that the Stewards have the power to suspend nor that he had a hearing before them at which he was represented by counsel who cross-examined the witnesses against him. Due process does not require more.

## II. TIMELINESS

Petitioner asserts that the Act and the regulations issued pursuant to it were violated because the Com-

---

[7] Petitioner asserts a property right in his jockey license. Section 213 of the Act, 4 P.S. §325.213, states that the "license gives its holder a privilege to engage in the specified activity, but the license does not give its holder a property right." Because we conclude that Petitioner received all the due process to which he would be entitled if a property right were involved, we need not determine if a licensee has a property right in his license.

[8] 58 Pa. Code §§165.201-165.216 detail the procedure to be followed before the Stewards. These sections, among other things, require: (1) notice of the violation charged and notice of the right to have counsel present, 58 Pa. Code §165.204; (2) that testimony be given under oath and recorded, 58 Pa. Code §§205 and 206; and (3) right to appeal to the Commission, 58 Pa. Code §165.214.

mission did not hold hearings on his ejectment and suspension nor issue its adjudications on the ejection and suspension within the time limits established by the Act and the regulations. Examination of those sections of the Act and the regulations cited by Petitioner shows that they were not violated.

## A.   Ejection

An individual who has been ejected from the facilities of a race track has a right to a hearing if he demands one within 48 hours of receiving notice of his ejection. 58 Pa. Code §165.231(c). If such a demand is made, "the hearing shall be *scheduled* within 48 hours of the time of receipt of the demand *or as soon thereafter as possible." Id*. (Emphasis added.) Petitioner was ejected on November 8, 1986 at 12:50 PM and filed his demand for a hearing on November 10, 1986 at 8:37 AM. A hearing on his ejection was held by the Commission on January 13, 1987.

Petitioner argues that 58 Pa. Code §165.231 requires a hearing to be held within 48 hours. As the above-quoted language clearly shows, the Commission need not hold a hearing within 48 hours but rather must schedule a hearing as soon as possible. This court has held that delay by the Commission in holding a hearing does not require dismissal[9] unless the party asserting error by the delay can demonstrate that he was prejudiced by the delay. *Delaney v. State Horse Racing Commission,* 112 Pa. Commonwealth Ct. 407, 535 A.2d 719 (1988); *Worthington v. Department of Agriculture,* 100 Pa. Commonwealth Ct. 183, 514 A.2d 311 (1986). The prejudice which Petitioner asserts he

[9] 58 Pa. Code §165.189 permits the Commission to dismiss a matter pending before it if a party fails "to proceed in or faithfully prosecute a matter . . . for a period in excess of 4 months."

suffered by the delay was the inability to practice his vocation as a jockey. However, Petitioner's ejection applied only to the Race Track. It did not prohibit him from practicing his vocation at other racetracks, and Petitioner does not allege that any other racetrack denied him access to their grounds. We conclude that Petitioner was not prejudiced by the delay between his ejection and the Commission's hearing.

## B. Suspension

Petitioner's assertion that the Commission's hearing on his suspension was untimely because it was not held within ten days of the suspension as required by section 213(h) of the Act, 4 P.S. §325.2(h), is based on a misconception. Section 213(h) pertains to situations in which the Commission suspends a license *prior* to a hearing. Petitioner's hearing before the Commission in this case was held in response to Petitioner's *appeal* from the Stewards' decision to suspend his license, a decision made *after* a hearing. The procedure governing appeals to the Commission from Stewards' decisions is found in 58 Pa. Code §165.214. There is no time requirement in that regulation pertaining to when the Commission must hold a hearing on the appeal.[10]

---

[10] 58 Pa. Code §165.214 states:

The Commission may investigate, consider, and review any decision or ruling of the Stewards upon its own motion or upon the request of an aggrieved party. Such appeal from the decision or ruling of Stewards must be made in writing within ten days following the receipt of oral notice or the issuance of written notice of such decision or ruling, whichever occurs first. The appeal must be sworn to before a Notary Public or one of the Stewards unless taken by the Commission itself and must set forth all matters complained of with particularity. Such written notice of appeal must be received in fact by the Commission within such ten-day period. Any appeal not so filed will be

## C. Adjudication

Section 226 of the Act, 4 P.S. §325.226 provides:

Within 30 days after the conclusion of the hear-
ing [on a license suspension, revocation, or re-
fusal to grant], the appropriate commission shall
make a final order in writing, setting forth the
reasons for the action taken by it and a copy
thereof shall be served on the applicant or li-
censee.

The hearing in the instant case was held on January 13,
1987. The hearing examiner asked Petitioner's counsel if
he would waive the 30 day requirement. In explanation
of his request, the hearing officer stated:

The Commission is working very, very hard to
be current, and in fact, is a lot closer to being
current than it was several months ago. But it
has mechanically been very difficult to meet the
thirty (30) day deadline and I would ask that you
waive the thirty (30) day rule . . . in this pro-
ceeding to allow us a little longer time to get the
transcript, review the transcript, and then issue
a decision.

N.T. ejectment hearing at 58. Counsel refused to waive.
*Id.* On February 10, 1987, the Commission issued an
order which stated:

[S]ince the notes of testimony [of the hearings]
have not yet been received and the hearing ex-
aminer has not had an opportunity to review
them in preparing a proposed adjudication and·

---

deemed untimely and all matters that could have been
therein reviewed or reheard by the Commission shall be
deemed settled and concluded and accepted and agreed to
by all parties and all errors waived and abandoned.
*See also* 58 Pa. Code §163.481(a) (review and appeal of decisions
and rulings of the Stewards and other racing officials made pursuant
to the Rules of Racing).

the Commissioners have not had the opportunity to properly review this matter it is hereby ordered that this matter will be adjudicated only after there has been ample opportunity for a review of the notes of testimony and a review of the proposed adjudication so that the Commissioners will be able to give John B. Luzzi a fair review of his appeal.

On April 21, 1987, the Commission issued its orders affirming Petitioner's ejectment and suspension.

The February 10, 1987 Commission order was issued within 30 days of the hearings and we hold that it fulfills the requirements of section 226 of the Act under the circumstances of this case. It contained reasons why the Commission would not issue a decision on Petitioner's ejectment and suspension. The reasons, lack of notes of testimony and an opportunity for review, were reasons which would hinder an appropriate resolution given the numerous and difficult issues raised by Petitioner. A reasoned decision on the merits of this case without review of the notes of testimony would not have been possible.

The Commission recognized its responsibility to act timely. The hearing officer explained to Petitioner during the hearing that the Commission was experiencing backlog problems which it was in the process of correcting. The Commission issued an order prior to the expiration of the 30 days, detailing its reasons for postponing its decision. As evidenced by this Court's decision in this case, the issues raised by Petitioner were many and complex. The Commission acted reasonably under the circumstances of this case.

Additionally, we note that this court in *West Penn Power Co. v. Pennsylvania Public Utility Commission,* 104 Pa. Commonwealth Ct. 21, 521 A.2d 75 (1987), held that a statutory section stating that an administra-

tive agency's adjudicative body "shall render a decision within 90 days after the record is closed,"[11] was *directory* rather than mandatory. The rationale for the decision in *West Penn Power Co.* was that the legislature may not "fix a time in which the exercise of the purely judicial function must occur." *Id.*, 104 Pa. Commonwealth Ct. at 28, 521 A.2d at 78. That rationale is equally applicable here.

There are situations in which such a course of action by the Commission might be improper. A delay between a hearing and an adjudication may violate a licensee's due process rights if the licensee demonstrates prejudice caused by the delay. *See Pennsylvania Liquor Control Board v. S & B Restaurant, Inc.*, 112 Pa. Commonwealth Ct. 382, 535 A.2d 709 (1988). Petitioner's only assertion of prejudice was his inability to practice his vocation. This general allegation is insufficient to demonstrate prejudice. It is particularly insufficient in this case where Petitioner had a hearing *prior* to his suspension and the Commission did act within 30 days by issuing an order which detailed its reasons for delaying action on the merits. If the circumstances of a particular case indicated that the notes of testimony were not crucial to the case or if the Commission was ignoring its backlog problem, then such an action as taken by the Commission would not be reasonable.

## III. SEARCH AND SEIZURE

Petitioner contends that the search of his person which disclosed the straws was an illegal search and seizure because it was conducted without his consent and without a warrant. Therefore, he argues that the evidence establishing that the straws contained cocaine is

---

[11] Section 332(g) of the Public Utility Code, 66 Pa. C. S. §332(g).

the fruit of an illegal search and seizure and inadmissible.

Warrantless searches in closely regulated industries are permissible when such searches are authorized by statute or by a duly promulgated regulation. *Commonwealth v. Black,* 365 Pa. Superior Ct. 502, 530 A.2d 423 (1987). In *Lanchester v. Pennsylvania State Horse Racing Commission,* 16 Pa. Commonwealth Ct. 85, 325 A.2d 648 (1974), this court held that horse racing was a highly regulated industry in which warrantless statutorily authorized searches would not violate the constitutional prohibition against unreasonable search and seizure. The authorization for warrantless searches in the horse racing industry is provided by 58 Pa. Code §163.312. *Peterson v. Pennsylvania State Horse Racing Commission,* 68 Pa. Commonwealth Ct. 353, 449 A.2d 774 (1982). This regulation states:

> The Stewards or the Commission, or any of them, or their designees, shall have the right to enter into, or upon the buildings, stables, rooms, or other places within the grounds of an association, and to examine the same, and to inspect and examine the personal property and effects of a person, within such places; and every person who is hereafter granted a license by the Commission, by accepting his license, does consent to such search, and to the seizures of any such hypodermic syringes, hypodermic needles, or other devices, and any drugs, stimulants, or narcotics, apparently intended to be, or which could be, used in connection therewith, or any appliances—electrical, mechanical, or otherwise—other than the ordinary equipment, of such nature as could affect the speed or racing condition of a horse.

Petitioner makes no argument in his brief as to why the search of his person which uncovered the straws is

not authorized under this rule. In his closing argument to the hearing examiner at the ejection hearing, Petitioner explained that his objection to the search was based on his belief that the search permitted by this regulation was limited to a search "for drug devices or drugs that would—could affect the speed or racing condition of a horse only." N.T. ejection hearing at 55. We do not find Petitioner's distinction persuasive.

The Rules of Racing[12] prohibit a licensee from being under the influence of alcohol or drugs while on the grounds of a racetrack and being in the possession of any unlawful drug. 58 Pa. Code §163.8. Clearly, jockeys under the influence of alcohol or drugs could affect the "speed or racing condition of a horse." It is not much harder to see the connection between the possession of unlawful drugs and the "speed or racing condition of a horse." Jockeys in the possession of cocaine could easily use the cocaine, give or sell it to someone else, or even attempt to use it to affect the horse directly. The "overriding purpose [of the Act is] to foster an image of horse racing that would make the image of that 'industry' an irreproachable one, even in the eyes of the skeptical public." *Helad Farms v. State Harness Racing Commission,* 79 Pa. Commonwealth Ct. 314, 320, 470 A.2d 181, 184 (1984) (citing *Daly v. Pennsylvania State Horse Racing Commission,* 38 Pa. Commonwealth Ct. 77, 391 A.2d 1134 (1978)). Jockeys in the possession of illegal drugs do not foster an irreproachable image of horse racing.

We conclude that the authorization for warrantless searches in 58 Pa. Code §312 contains authorization to search licensees for illegal drugs whether or not the drugs might be used directly on the horse. The search

---

[12] The Rules of Racing are found at 58 Pa. Code §§163.1-163.538.

of Petitioner's person which uncovered the straws was not an illegal search and seizure.

## IV. LAB

Petitioner contends that the Act authorizes the use of the Lab only for the anaylsis of horse urine and blood. He argues that the Lab cannot be used for analysis of any samples not obtained from horses and therefore the results of tests performed on the straws and on his urine are invalid.

The Lab is part of the Pennsylvania Race Horse Testing Program (Program) which was established to

analyze samples for the presence in race horses of any medication, to develop techniques, equipment and procedures, to collect and test for the presence of medication in race horses, to ascertain permitted tolerance levels or therapeutic dose allowances for medication, to offer consultation and advice to the public on all issues regarding the medication of race horses and to conduct research in medication issues involving race horses.

Section 302(b) of the Act, 4 P.S. §325.302(b). The Program and the Lab were established to develop information concerning the medication of race horses. However, the language of section 302(b) does not prohibit other uses of the Lab. The *purpose for which the Lab was established is irrelevant to the validity of the test results obtained from the Lab*.

The test results were not admitted as evidence by the Commission. What was admitted was the expert testimony of Frank Railing, Interim Director of the Program and official chemist. The tests on the material in the straws and Petitioner's urine were either conducted by Railing or done under his direct supervision. Railing relied on the results of the tests in testifying that the

straws contained cocaine and that Petitioner's urine contained a substance indicating usage of cocaine.

For this testimony to be inadmissible based on the invalidity of the test results obtained from the Lab, Petitioner would have to show that the techniques used to obtain the results were unreliable. *See Commonealth v. Topa*, 471 Pa. 223, 369 A.2d 1277 (1977). Petitioner made no objection to the technique used to obtain the test results relied on by Railing. Railing testified that: the procedures used for testing horse samples could be used to test the material in the straws, N.T. ejection hearing at 29, and to test human urine, N.T. suspension hearing at 42; he had previously performed such tests on other samples, N.T. ejection hearing at 30; and the procedures used were the generally accepted procedures for determining the presence of drugs. *Id.* at 29-30.

Petitioner offered *no* evidence to refute the reliability of the techniques used by the Lab to obtain the test results relied on by Railing. The fact that the Lab was not established for the purpose of testing samples other than those obtained from horses has no relevancy to the issue of the validity of the test results.

## V. CHAIN OF CUSTODY

Petitioner contends that the chain of custody of the straws from the time the straws left the Race Track until their arrival at the Lab was not established, making any evidence based on the results of the tests performed on the straws inadmissible. The Pennsylvania Supreme Court set forth the rule concerning chain of custody in *Commonwealth v. Mazarella*, 279 Pa. 465, 472, 124 A. 163, 165 (1924), where it held: "It is not necessary that the [sample] sent away for chemical analysis be so identified as to preclude the possibility of doubt." This court, in *Worthington*, held that, pursuant to 58 Pa.

Code §163.315,[13] the steps taken in collecting, preserving, and handling a specimen tested by the Commission's official chemist would be deemed proper absent affirmative proof to the contrary.

To support his argument that the chain of custody of the straws was defective, Petitioner relies on (1) testimony describing the appearance of the material in the straws at the Race Track which differs from that describing the appearance upon arrival at the Lab and (2) testimony that the straws were in a ziplock bag which was not sealed. N.T. ejection hearing at 33. This testimony does not reach the level of the affirmative proof necessary to show that the straws were not properly handled.

The testimony describing the material in the straws as observed at the Race Track was as follows: Mike Lucas, Jockey Guild Representative, described it as "brownish dust;" N.T. ejection hearing at 52-53; Francis Gleason described it as an "off-white or grayish substance." *Id.* at 46. Railing described the material in the straws received at the Lab as "white crystalline powder." *Id.* at 31. This testimony is clearly inconsistent. However, it does not meet Petitioner's burden to show by affirmative proof that the straws were not properly handled. The inconsistencies in the description of the material in the straws merely shows that three different people saw different things. The testimony that the bag in which the straws were placed for delivery to the Lab *could* be opened is also not affirmative proof that the

---

[13] 58 Pa. Code §163.315 states:

Urine or blood test reports prepared and issued hereunder by the official chemist of the Commission shall be deemed *prima facie* correct and all steps undertaken in the collection, preservation, handling and testing thereof shall be presumed proper and correct in the absence of affirmative proof to the contrary.

bag containing the straws was tampered with prior to its delivery to the Lab.

Even without reliance on 58 Pa. Code §163.315, the testimony presented to the Commission is sufficient to meet the standard set forth in *Mazarella*. Petitioner testified that he watched Gleason place the straws removed from his pocket into a bag. N.T. ejection hearing at 43. Gleason testified that he placed the straws in the bag, closed it, signed and placed an identification tag on the bag, and sent the bag to the Lab. *Id*. at 47-48. Railing testified that the Race Track driver handed him a bag with an identification tag signed by Gleason which contained two straws. *Id*. at 30-32. The driver did not testify but the absence of his testimony does not make the testimony based on the results of the tests performed on the straws inadmissible. "Gaps in the chain of custody go to the weight to be given to the testimony, not to its admissibility." *Wise v. Pennsylvania State Horse Racing Commission*, 100 Pa. Commonwealth Ct. 205, 211, 514 A.2d 308, 311 (1986).

## VI. Sufficiency of Evidence

Petitioner's suspension, as affirmed by the Commission, was based on the violation of: (1) 58 Pa. Code §163.8(2) (possession of an illegal drug) for possession of cocaine; (2) 58 Pa. Code §163.471 (violation of the "spirit" of the Rules of Racing) for previous use of cocaine; (3) section 213(f)(2) of the Act and 58 Pa. Code §163.88 (experience, character or general fitness inconsistent with the best interests of racing) for possession of cocaine; and (4) 58 Pa. Code §163.6(d) (association with a person who has been convicted of a crime) for association with a person convicted of a crime on Race Track grounds.[14] Petitioner raises three objections to what he

---

[14] Petitioner's association with a felon was not a violation considered by the Stewards. Petitioner objected to the introduction of

terms the "sufficiency" of the evidence to support these violations. Our review, as previously noted, is limited to determining whether there is substantial evidence to support the essential findings of fact, an error of law has been made, or Petitioner's constitutional rights have been violated. *Sipp v. State Horse Racing Commission,* 77 Pa. Commonwealth Ct. 561, 466 A.2d 296 (1983).

## A.   Inadmissible Evidence

Petitioner first asserts that neither the Commission's findings that he was in possession of an illegal drug nor had previously used cocaine are supported by the evidence because these findings rest on testimony which was inadmissible because it was based on invalid test results. This allegation is premised on Petitioner's arguments set forth in sections III, IV and V of this opinion. Because Petitioner did not prevail on any of those arguments, this assertion need not be considered further.

## B.   Possession

Petitioner next contends that he cannot be considered in violation of 58 Pa. Code §163.8(2) because there was no evidence introduced that he had "knowing or intentional" possession of cocaine, which he alleges is a necessary element of this violation. Section 163.8(2) states that:

No licensee . . . shall: .

. . .

(2)   be in possession of, transfer or deal in any unlawful or dangerous drug within the terms

---

the testimony on this issue during the suspension hearing. N.T. suspension hearing at 48, 51, 61. However, Petitioner has not raised that issue in his brief for this court and therefore has waived his right to have it considered. Pa. R.A.P. 2116.

and meaning of the criminal and drug control statutes of the Commonwealth.

Petitioner argues that the criminal and drug control statutes require that he had "knowing or intentional" possession of cocaine and that his unrebutted testimony was that he did not know that straws containing cocaine were in the pants he was wearing until the search revealed them. We find this argument unpersuasive.

" 'Possess', as used in criminal statutes, usually signifies an intentional· exercise of control over a designated thing, accompanied by a knowledge of its character." *Peterson,* 68 Pa. Commonwealth Ct. at 363, 449 A.2d at 779. However, 58 Pa. Code §163.8(2) is *not* a criminal statute. We hold· that the reference to the "terms and meanings of the criminal and drug statutes" is a reference to "unlawful or dangerous drug" and not to possession. This court will not engraft an element of scienter into an administrative agency regulation. *See Girard Prescription Center v. Department of Public Welfare,* 90 Pa. Commonwealth Ct. 488, 496 A.2d 83 (1985).[15]

Even if criminal possession were required by 58 Pa. Code §163.8(2), our review of the record convinces us that there is substantial evidence to support the Commission's finding that Petitioner was in possession of co-

---

[15] We do not read *Peterson* as holding that "possession," as the term is used in the Rules of Racing, requires the criminal "intentional and knowing" possession. Peterson was found to be in possession of injectable materials and a loaded revolver. The court held that the finding that he was in possession of injectable materials, discovered in a tack box in the van he was driving, was not supported by substantial evidence. In reaching that conclusion, the court referenced the testimony of the co-owner of the van who testified that he had inadvertently failed to remove the materials prior to Peterson taking the van to the race track and that Peterson had " 'absolutely no knowledge that I had put those in there' ". *Id.* at 363, 449 A.2d at 779.

caine. We note that substantial evidence is that evidence which a reasonable mind would accept as adequate to support a conclusion and that credibility of witnesses is for the Commission to determine. *McKenna v. Pennsylvania State Horse Racing Commission*, 83 Pa. Commonwealth Ct. 116, 476 A.2d 505 (1984).

The straws containing the cocaine were found in the pocket of the pants Petitioner was wearing. Petitioner testified that the pants belonged to his younger brother who was currently "in rehabilitation for using drugs." N.T. ejection hearing at 39-40. Petitioner's brother did not testify. Expert testimony was heard that the test results on Petitioner's urine indicated Petitioner had previously used cocaine. A reasonable mind could infer from this evidence that Petitioner had knowing and intentional control of the cocaine in the pocket of the pants he was wearing.

### C. Association

Petitioner's final argument in this section of his brief goes to the Commission's conclusion that Petitioner violated 58 Pa. Code §163.6(d) by associating with Frank Trachtenberg, who the Commission found was convicted of drug dealing in Florida in 1977 and, at the time of Petitioner's association with him, was facing drug charges in Bucks County and Federal courts. Finding of Fact 15, Suspension Adjudication. Petitioner *does not dispute* that Trachtenberg was with him at the racetrack on several occasions nor that Trachtenberg had been convicted of drug dealing. He asserts that the conclusion that he was associating with a person convicted of a crime is "ludicrous and stretches credulity" because the TRPB personnel did not inform him that Trachtenberg was a convicted felon, Petitioner's brief at 19, and in fact, did not know themselves that Trachtenberg was a felon when he began appearing at the Race Track.

Petitioner bases his argument on 58 Pa. Code §165.96(a) which states:

> No licensee shall at any time associate with, consort with or in any manner communicate with any *known* gambler, bookmaker, tout, or persons of similar pursuits either on or off the tracks. If the reputation of such gambler, bookmaker, tout, or person of similar pursuit is notorious, the licensee shall be presumed to have knowledge of the fact. (Emphasis added.)

However, Petitioner was found to have violated 58 Pa. Code §163.6(d) which states, in pertinent part:

> The Commission may . . . suspend or revoke a license issued if it finds that the applicant, or any person who is a partner, agent, employe or associate of the applicant, has been convicted of a crime in any jurisdiction, or is under an order of suspension or revocation or has been denied a license or has been ruled off by any Racing Commission or Board of Stewards, or *is associating or consorting with' any person or persons who have been convicted of a crime or crimes in any jurisdiction or jurisdictions.* . . . (Emphasis added.)

Section 163.6(d), unlike §165.96(a), does not require that the licensee know that an individual he is associating with has been convicted of a crime. As we previously noted, this court will not require knowledge where an administrative regulation does not specifically require it. *Girard Prescription Center.* The record contains substantial evidence to support the Commission's finding that Petitioner was associating with an individual who had been convicted of a crime.

## CONCLUSION

Accordingly, the orders of the Commission are affirmed.

ORDER

AND NOW, October 5, 1988, the orders of the Pennsylvania State Horse Racing Commission in the above-captioned case are affirmed.

Judge BARRY concurs in the result only.

This decision was reached prior to the resignation of Judge MACPHAIL.