Beverly P. Hacker, Petitioner *v.* The Pennsylvania Horse Racing Commission, Respondent.

Argued September 10, 1979, before Judges WILKIN-SON, JR., ROGERS and CRAIG, sitting as a panel of three.

*Bruce E. Cooper,* for appellant.

*Bartholomew J. DeLuca,* with him *Larrick B. Sta-pleton,* for appellee.

OPINION BY JUDGE WILKINSON, JR., September 28, 1979:

This is an appeal from an order of the Pennsylvania State Horse Racing Commission (Commission) which imposed a fine of $500 upon petitioner, a horse trainer for violation of the Rules of Racing. We affirm.

Petitioner is the registered trainer of the horse Shelter Half, a two-year-old who finished first in the fifth race on December 24, 1977 at Keystone Race Track. Upon the finding of the presence of the drug phenylbutazone, an analgesic, in the urine sample of the horse taken after the race, the Board of Stewards of the race track fined petitioner $100 and disqualified the horse from the purse money. On appeal to the Commission a de novo hearing was held before a hearing examiner. The director of the split sample laboratory for the Commission testified that the horse had received 100 milligrams of phenylbutazone within six to twelve hours of the time the sample was taken. On cross-examination the director stated that

this amount represented about one-twentieth of the recommended dosage of 2,000 milligrams and that such a dosage would have a minimal effect, if any, upon the horse. In its adjudication, the Commission accepted the theory advanced by petitioner that the horse had apparently ingested a small quantity of the drug from hay in the stall where Shelter Half was quartered before the race. The Commission sustained the findings of the Board of Stewards that petitioner had violated Rules 15 and 29 of the Rules of Racing; however, the Commission imposed a $500 fine upon petitioner but due to ''the special and extraordinary circumstances of this case'' ruled the horse eligible for the purse money.

Rule 15.02[1] of the Rules of Racing provides:

Should the chemical analysis of any sample taken from a horse entered in a race indicate the presence of any narcotic, stimulant, depressant, local anesthetic or analgesic, the trainer of the horse, together with the assistant trainer, stable foreman, groom, or any other person shown to have had care and attendance of the horse shall be subject to disciplinary action and such horse shall be declared unplaced for every purpose except pari-mutuel wagering which shall in no way be affected.

Rule 15.02(a)2f. also provides: '' 'Bute' shall not be administered to any two-year-olds to race in Pennsylvania.'' Rule 29.06 of the Rules provides: "A Trainer shall be responsible for the condition of a horse trained by him.''

Petitioner premises his appeal on two arguments. First, he contends that the Commission acted arbitrarily and capriciously in finding a violation of the Rules where there is no evidence that the drug was

---

[1] This Rule has been since amended by the Commission. *See* 9 Pa. B. 429.

actually administered to the horse and where evidence of the presence of the drug shows only a small quantity (compared with the normal dosage) was in the horse's system during the race. Second, he argues the Commission erred as a matter of law in imposing liability upon the trainer under these circumstances because to do so makes the trainer liable for the condition of his horse solely upon the finding of a positive urinalysis. Having examined the record and the adjudication of the Commission, we conclude that neither of these arguments can be sustained.

Unlike Rules 15.05, 15.06 and 15.07 which refer to the "administration" of a prohibited drug an illegal practice, Rule 15.02 refers to the "presence" of any "narcotic, stimulant, depressant, local anesthetic or analgesic. . . ." It is evident that the purpose of the Commission in promulgating this rule was to eliminate any of the prohibited drugs in order to ensure the integrity of the race and the confidence of the public in the fairness of races. Thus, it is not the quantity or type of the drug or the health of the horse that is relevant in the application of Rule 15.02; rather it is the presence of any drug that is sought to be avoided. We believe that in applying these Rules the Commission may, in the proper circumstance, find a trainer responsible for the presence of a drug due to negligence of the trainer or his agents in caring for or guarding the horse prior to a race. *See Barry v. Barchi,* U.S. , 99 S. Ct. 2642 (1979) ; *Johnson v. State Horse Racing Commission,* 5 Pa. Commonwealth Ct. 458, 290 A.2d 277 (1972). Such liability may be imposed in this case even accepting petitioner's testimony and argument that the horse accidentally ingested a small quantity of the drug. As the Commission stated in its adjudication:

[T]he Petitioner, as trainer, is responsible for the proper maintenance of the stall area. It

assuredly and obviously is within common knowledge of any participant in this industry that it is likely for common medications such as phenylbutazolidin to be present in and about any area where there has been food or food overspill.

Having concluded that petitioner failed in his duty to properly maintain the stall area and that such failure resulted in the presence of a prohibited drug, it follows that petitioner's second argument must also fall since it is clear that the Commission's finding was not based solely upon the presence of a positive urinalysis. Consequently, petitioner's reliance on *Commonwealth v. Webb*, 1 Pa. Commonwealth Ct. 151, 274 A.2d 261 (1971) is misplaced.

Accordingly, we will enter the following

ORDER

AND Now, September 28, 1979, the order of the Pennsylvania State Horse Racing Commission at No. 78-016, dated April 20, 1978, is hereby affirmed.