Vera Meyer, Petitioner *v.* Commonwealth of Pennsylvania, State Horse Racing Commission, Respondent.

Submitted on briefs February 2, 1983, to Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*G. Eugene Beechwood, Jr.,* for petitioner.

*Samuel F. Meisenhelder,* General Counsel, for respondent.

OPINION BY JUDGE CRAIG, March 10, 1983:

Vera Meyer, the owner of a two-year old racehorse that placed second (horse two) in the sixth race at the Penn National Race Track on October 12, 1980, appeals an order of the Pennsylvania State Horse Racing Commission, which fined the trainer of the horse that placed first in that race (horse one) after the commission's chemist found .8 microgram per milliliter of phenylbutazone, a prohibited substance, in horse one's blood and urine sample.[1]

Mrs. Meyer contends that the commission abused its discretion in not disqualifying horse one from the

---

[1] Although not a party to the commission's hearing, Mrs. Meyer has standing in our court under 2 Pa. C. S. §702 as a person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication, *see Official Court Reporters v. Pennsylvania Labor Relations Board,* 67 Pa. Commonwealth Ct. 256, 263, 446 A.2d 1357, 1360-61 (1982), and who has no statutory right to appeal the commission's order to the court of common pleas under 42 Pa. C. S. §933, *see* 2 Pa. C. S. §701(b) (2) ; *Delaware County Lodge No. 27 v. Pennsylvania Labor Relations Board,* 497 Pa. 319, 320, 440 A.2d 512, 513 (1982).

first place purse, and in not explaining in its decision why it chose a more lenient penalty.[2]

To understand this dispute, we must review Rule 15.02 of the Commission's Rules of Racing; before its amendment on July 26, 1980, that rule provided:

> Should the chemical analysis of any sample taken from a horse entered in a race indicate the presence of any narcotic, stimulant, depressant, local anesthetic or analgesic, the trainer of the horse, together with the assistant trainer, stable foreman, groom or any other person shown to have had care and attendance of the horse *shall* be subject to disciplinary action and such horse *shall* be declared unplaced for every purpose except pari-mutuel wagering which shall in no way be affected. (Emphasis added.)

As amended in July, 1980, the rule ceased to contain the words requiring trainer discipline and purse forfeiture when a horse is found to have ingested illegal drugs. However, in relevant part, it provided:

> It shall be the intent of these rules to protect the integrity of horse racing, to guard the health of the horse, and to safeguard the interests of the public and the racing participants through the prohibition or control of all drugs and medications or substances foreign to the natural horse. In this context: . . . (4) no foreign substance shall be found in a test sample of a two-year-old.

---

[2] The commission contends that Mrs. Meyer is here attacking the validity of an administrative regulation and is therefore barred from doing so because she failed to challenge the regulation at the administrative hearing, citing *Tancredi v. State Board of Pharmacy*, 54 Pa. Commonwealth Ct. 394, 421 A.2d 507 (1980). However, Mrs. Meyer is challenging the commission's discretion in selecting a penalty in light of its existing and pending regulations, rather than challenging the validity of those regulations.

10 Pa. B. 1992 (1980). The commission again amended rule 15.02 on October 18, 1980, six days after the disputed race, adding section 15.02(B)(b), which provided:

> A finding by the chemist of a foreign substance or an approved substance used in violation of Rules of Racing No. 15.02 in any test sample of a horse participating in a race *shall* result in the horse being disqualified from purse money or other awards except for purposes of pari-mutuel wagering, which shall be in no way affected.

10 Pa. B. 4100 (1980) (emphasis added).[3]

In its opinion, the commission acknowledged that "[t]he actual purpose of [rule 15.02] is simply to absolutely bar and prevent any form of usage of a drug in an immature and not yet fully developed thoroughbred racing in Pennsylvania." However, the commission also recognized that rule 15.02(B)(b) was not in effect when the race at issue occurred. Given the absence of this provision,[4] the commission acted under section 3 of its Administrative Rules, General Provisions, which provides:

> Section 3. Penalties—
>
> (a) The penalties for violation of the Law or the Rules of the Commission *may include* the following:
>
> (1) Denial, revocation or suspension of license;

---

[3] The commission subsequently amended rule 15 another time on April 25, 1981. The present regulations involving drug regulations are contained in 58 Pa. Code §§163.302-163.313.

[4] The commission could not have applied Rule 15.02(B)(b) in this case, because, where an agency, in promulgating a regulation, fails to comply with the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, 45 P.S. §1101-§1602, its "regulation" is a nullity. *Newport Homes v. Kassab*, 17 Pa. Commonwealth Ct. 317, 332 A.2d 568 (1975).

    (2)   Monetary fines not exceeding $5,000 for each violation;

    (3)   Suspension from one or more activities at one or more tracks;

    (4)   Expulsion from thoroughbred racing in Pennsylvania;

    (5)   Forfeiture of purse; or

    (6)   Such other penalty or sanction as may be permitted by the Act and Rules and as may appear proper and appropriate to the Commission or Stewards.  (Emphasis added.)

Given our limited scope of review,[5] and recognizing that an administrative agency's interpretation of its own regulation is entitled to controlling weight unless it is plainly erroneous or inconsistent with the regulation, *House v. Scanlon*, 61 Pa. Commonwealth Ct. 8, 432 A.2d 324 (1981), we cannot say that the commission abused its discretion in not withholding the purse from horse one.[6]

Furthermore, the commission, in selecting less than the maximum penalty, evidently relied on its Finding of Fact No. 4:

---

[5] This court must affirm an adjudication of the commission unless constitutional rights were violated, the adjudication was not in accordance with the law, procedural rules were violated or a necessary finding of fact was not supported by substantial evidence. *Daly v. Pennsylvania State Horse Racing Commission*, 38 Pa. Commonwealth Ct. 77, 391 A.2d 1134 (1978). Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.*

[6] *Cf. Hacker v. Pennsylvania Horse Racing Commission*, 46 Pa. Commonwealth Ct. 263, 405 A.2d 1379 (1979) (After finding 100 milligrams of phenylbutazone in a horse's urine sample, the commission fined the trainer, but due to the "special and extraordinary circumstances of this case" ruled the horse eligible for the purse money notwithstanding former rule 15.02 which stated that any horse found with a drug "shall be declared unplaced." Not surprisingly, the trainer, who appealed, never challenged the leniency of the commission's penalty.)

Testimony was received from Dr. Thomas Tobin, Professor of Veterinary Science and Professor of Toxicology at the University of Kentucky, indicating that the present state of the art has determined that a race horse will not be affected by the medication phenylbutazone at levels of less than one microgram per milliliter. In fact, Dr. Tobin testified that many experts believe that quantities of two micrograms per milliliter or less will have no affect upon the condition of a race horse.

Accordingly, we affirm the decision of the commission.

ORDER

Now, March 10, 1983, the order of the Pennsylvania State Horse Racing Commission, No. 80-091, dated April 10, 1981, is affirmed.