535 A.2d 719

Ralph J. Delaney, Jr., Petitioner *v.* Commonwealth of Pennsylvania, State Horse Racing Commission, Respondent.

Argued June 12, 1987, before Judge COLINS, and Senior Judges BARBIERI and NARICK, sitting as a panel of three.

*Daniel D. Radich,* with him, *Richard G. Phillips, Richard G. Phillips Associates,* for petitioner.

*John B. Hannum, Jr.,* for respondent.

Opinion by Judge Colins, January 8, 1988:

Ralph J. Delaney (petitioner), trainer of the thoroughbred horse "Mr. Duce," appeals from an adjudication and order of the Pennsylvania State Horse Racing Commission (Commission) imposing a Two Hundred Fifty Dollar ($250.00) fine on petitioner due to the finding of an excessive amount of the anti-inflammatory substance Phenylbutazone (Bute), in urine and blood samples obtained from "Mr. Duce" after the fourth race in which he placed third at Keystone Racetrack on June 22, 1983. We reverse for the reasons hereinafter stated.

After the fourth race on June 22, 1983, at Keystone Park, pursuant to Commission rules, blood and urine samples were taken from the horse.[1] These samples were split.[2] One sample was sent to the state laboratory in West Chester, Pennsylvania, and the other retained in the detention barn. Tests performed at the West Chester laboratory indicated the presence of Bute in the amount of 2.7 micrograms per milliliter in the horse's blood.[3] Petitioner received the results of the state examination on June 25, 1983, and pursuant to a receipt of a positive report, a search was conducted of petitioner's barn and tack areas. No prohibited substances or items were found. In accordance with the rules of racing,[4] petitioner requested that the split sample be sent to Cornell Laboratory for testing. Before the sample was shipped to Cornell, a fire broke out in the detention barn. The area where the split samples were kept was not damaged by fire; however, there was water

---

[1] 58 Pa. Code §§163.313, 163.318.

[2] 58 Pa. Code §163.318(b).

[3] 58 Pa. Code §163.304(2), pertaining to the administration of substances of therapeutic value, states that "the test level of phenylbutazone under this section may not be in excess of two micrograms (mcg) per milliliter (ml) of plasma."

[4] 58 Pa. Code §163.318(c), (d)(2).

and smoke damage to this area. The sample in question and that of another horse had been removed from the refrigerator in the office in anticipation of being shipped to Cornell Laboratory. These samples were not destroyed by the fire, but the vials containing the samples were soot covered. Subsequently, these samples were destroyed by the Commission's employees acting at the direction of a supervisor. No determination was made as to whether these samples were still capable of being tested.

Petitioner was notified that the split sample taken from his horse would not be tested due to the fire at the barn. The stewards then disqualified "Mr. Duce" and fined petitioner $250.00 for positive test results. Petitioner appealed this decision to the Commission, and after eighteen months, a hearing was held. On July 18, 1985, the Commission upheld the stewards' fine of petitioner. It is from this July 18, 1985, order of the Commission that petitioner appeals.

Our scope of review requires the Court to affirm the imposition of a fine unless the adjudication does not conform with the law or procedure, or necessary findings of fact are not supported by substantial evidence. *Smith v. Pennsylvania State Horse Racing Commission,* 92 Pa. Commonwealth Ct. 472, 501 A.2d 303 (1985).

Petitioner initially argues that he was prejudiced by the eighteen month delay between the date he was notified of the positive finding and the date of the hearing. Petitioner's motion to dismiss was denied by the Commission, because petitioner failed to show any prejudice as a result of the delay.[5] In *Worthington v. Department*

---

[5] 58 Pa. Code §165.189 states:

In the event of failure of a party to proceed in or faithfully prosecute a matter pending before the Commission for a period in excess of 4 months, which has not been continued, the same may be dismissed with prejudice for reason

*of Agriculture, State Horse Racing Commission,* 100 Pa. Commonwealth Ct. 183, 514 A.2d 311 (1986), we held that the Commission does not abuse its discretion by dismissing an allegation of prejudice absent a showing of default or neglect.

Petitioner next argues that the failure to test the split sample was a violation of due process because it deprived him of evidence which might have been exculpatory in nature. The regulation found at 58 Pa. Code §163.318(d)(1) indeed states that "[i]f the test of the split portion does not substantially confirm the findings of the original laboratory, the Commission will not consider the sample to constitute a *prima facie* violation of this chapter and no penalty will be imposed." (Emphasis in original.) (*But see* 58 Pa. Code §163.318(d), providing that "[i]f the [second] test confirms the findings of the original laboratory, it is considered to be a *prima facie* violation of the applicable provisions of this chapter.") (Emphasis in original.) The Commission counters that the results of the first test were dispositive because a retest of the split sample was prevented by an "Act of God," pursuant to 58 Pa. Code §318(e), which pertinently states that:

> In the event of an Act of God, power failure, accident, strike or other action that prevents a retest from being made which is without the fault of or beyond the control of the Commission, the results of the primary official test shall be accepted as *prima facie* evidence of whatever they may show. (Emphasis in original.)

Petitioner submits that the above regulation is inapplicable to this matter because the unavailability of the split sample for retesting was not the result of an "Act of

---

of the default or neglect at the discretion of the Commission on its own motion or upon the motion of another affected party.

God" but the result of employees' actions within the Commission's control.

We agree that the event that resulted in the split sample being destroyed does not come within those exceptions mentioned in 58 Pa. Code §163.318(e). The record reveals that the fire was the result of the interaction of chemicals that were improperly stored in the detention barn. While a fire may be one of the events envisioned by the regulation, this was not the event that destroyed the samples. The samples were destroyed by the Commission's employees without taking any steps to determine whether the samples could still be accurately analyzed. In its brief, the Commission states that the events that resulted in the destruction of the split samples were beyond their control. Also, the Commission in its brief, argues that the Director of Enforcement, based upon his training and experience, knew that the blood samples had to remain upright, unshaken and in a refrigerated condition in order for any subsequent testing to be valid and that such conditions had been destroyed by the handling of the samples during the fire. However, this testimony was never placed on the record at the hearing.

There is no testimony on the record that the Director of Enforcement had any scientific training that would enable him to judge the validity of a sample just by looking at it. Furthermore, the Director of Enforcement testified to the effect that he never saw the samples in question. The Commission additionally argues that the Director of Enforcement had no doubt in his mind that the samples were unusable. Turning to the Commission's "opinion," it states that there was no testimony relating to what damage, if any, would have been sustained by the test samples if they were exposed to heat in circumstances as described in the detention barn. The Commission's assertion that this blood would have been unusable is not supported by the record.

Since the vials were destroyed by employees of the Commission, it is the burden of the Commission to produce credible expert or competent opinion testimony that the contents of the sealed soot-covered vials were incapable of accurate testing.

An agency's interpretation of its own regulation is entitled to great weight. *Meyer v. State Horse Racing Commission,* 72 Pa. Commonwealth Ct. 495, 456 A.2d 1164 (1983). Nevertheless, administrative agencies are no more free to ignore their regulations than are persons sought to be regulated. *See Smithkline Beckman Corp. v. Commonwealth of Pennsylvania,* 85 Pa. Commonwealth Ct. 437, 482 A.2d 1344 (1984).

The opportunity for two analyses of the sample is of great importance in the instant matter. "Bute" is not an illegal substance, per se, but is classified as being of "therapeutic value" by the Racing Commission. However, the dosage, at the time in question, was not allowed to exceed two micrograms per milliliter of plasma. Since we are dealing with finite amounts, an opportunity to obtain an independent, quantitative analysis as provided for the rules of racing is critical.

It was the Commission's employees who destroyed the samples. Thus, the destructive action was within the Commission's control and not within the purview of Rule 318(e). Therefore, since the Commission's actions prevented it from adhering to its own procedure in providing the petitioner with the opportunity mandated in the regulations, its actions are tantamount to a denial of administrative due process.

Accordingly, the Board's order is reversed.

## ORDER

AND NOW, this 8th day of January, 1988, the order of the Pennsylvania State Horse Racing Commission in the above-captioned matter is hereby reversed.