**Jayne VADERS, Petitioner**

v.

**PENNSYLVANIA STATE HORSE RACING COMMISSION,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2008.[1]

Decided Jan. 9, 2009.

---

**1.** Argued seriately with *Jayne Vaders v. Pennsylvania State Horse Racing Comm'n* (704 C.D. 2008, filed January 9, 2009).

Alan Pincus, Las Vegas, NV, for appellant.

Jorge M. Augusto, Asst. Counsel, Harrisburg, for appellee.

BEFORE: FRIEDMAN, Judge [2] SIMPSON, Judge, and BUTLER, Judge.

OPINION BY Judge BUTLER.

Jayne Vaders (Vaders) petitions for review of the April 16, 2008 State Horse Racing Commission (Commission) order affirming the Board of Stewards' (Stewards) Ruling No. 07128PP, in which her owner/trainer license was revoked. The issue in this case is whether Vaders' due process rights were violated because the Commission: a) would not turn over documents related to the charges against her; b) failed to allow the introduction of mitigating evidence; c) selectively applied 58 Pa.Code § 163.316; and d) redistributed Fourteentwentyone's purse money without first conducting a hearing.

Vaders trains and/or owns 35–45 horses stabled at Philadelphia Park Racetrack. On August 26, 2006, the Stewards issued Ruling No. 06299PP against Vaders after determining that her horse Idol Gina had tested positive for 2–1 (Hydroxyethyl) Promazine Sulfoxide after winning the fifth race on April 11, 2006. After issuing the ruling, the Stewards sat down with Vaders, explained that she was getting too many positives, and warned that if she got anoth-

---

2. The decision in this case was reached before January 1, 2009, when Judge Friedman assumed the status of senior judge.

er positive test result, her license would be revoked.

On February 4, 2007, Vaders' horse, Fourteentwentyone, won the second race at Philadelphia Park. Consistent with Commission procedures, following the race, blood and urine samples were taken from Fourteentwentyone for drug testing.[3] Fourteentwentyone tested positive for 2–1 (Hydroxyethyl) Promazine Sulfoxide and Acepromazine; 2–1 (Hydroxyethyl) Promazine Sulfoxide is a metabolite of Acepromazine, a Class III drug used as a therapeutic drug. Even though the drugs were found in the horse's system on race day, it could not be determined whether they were administered on that day. Once the blood and urine samples are tested by the Pennsylvania Equine Toxicology Laboratory (Commonwealth's lab), a trainer may choose to have a split sample sent to another lab to verify the testing. Vaders exercised her right to send a split sample to another lab. The second lab confirmed that the drugs were in the horse's system. A report was completed by a Commission investigator and sent to the Stewards to determine if a hearing should be held. The purse money for the second race on February 4, 2007 was redistributed on March 10, 2007 by Ruling No. 07088PP.[4]

■ A hearing was held before the Stewards on April 13, 2007, based on the positive test result for Fourteentwentyone. The Stewards determined that Vaders violated 58 Pa.Code §§ 163.302(a)(1)-(2), 163.303(a)-(c), 163.309, and 163.521(f) (Commission's regulations). Vaders' attor-

ney made a written request for documentation from the Commission of data packs from its lab, all investigative reports, and any other documents relevant to the proceedings. The Commission never provided this information. The Stewards, in a ruling issued April 28, 2007, revoked Vaders' license, effective May 8, 2007, under the authority of Section 163.316 of the Commission's regulations. On May 2, 2007, Vaders appealed the Stewards' decision to the Commission and requested supersedeas, which was granted. A hearing was held in front of the Commission's hearing officer on November 16, 2007. The hearing officer affirmed the Stewards' decision. Vaders appealed to this Court.[5]

■ Vaders argues that the Commission violated her due process rights by refusing her attorney's request for discovery which would have provided mitigating evidence, by selectively enforcing 58 Pa.Code § 163.316 against her, and by redistributing her horse's purse money without first affording her a hearing. In an administrative hearing, due process requires, at a minimum, notice and the opportunity to be heard. *See* Section 504 of the Administrative Agency Law, 2 Pa.C.S. § 504; *Grossman v. State Bd. of Psychology*, 825 A.2d 748 (Pa.Cmwlth.2003); and *Gruff v. Dep't of State*, 913 A.2d 1008 (Pa.Cmwlth.2006). Further, discovery, as provided for in the Pennsylvania Rules of Civil Procedure for court proceedings, is not made available in administrative proceedings, and Rule 35.142(a) of the General Rules of Adminis-

---

3. Every horse that wins a race is tested, along with approximately five other horses each race day. Notes of Testimony, November 16, 2007 (N.T.), at 10; Reproduced Record (R.R.) at 19a.

4. The redistribution of purse money is a matter separate from the action taken against the trainer.

5. "This Court's scope of review of an adjudication of the Commission is limited to a determination of whether constitutional rights were violated, whether findings of fact are supported by substantial evidence of record, or whether an error of law has been committed." *Monaci v. State Horse Racing Comm'n*, 717 A.2d 612, 616 n. 15 (Pa.Cmwlth.1998).

trative Practice and Procedure (Administrative Rules)[6] allows parties to request subpoenas for the attendance of witnesses or production of documents upon written application to the agency's head or oral application at a hearing. *Weinberg v. Ins. Dep't,* 41 Pa.Cmwlth. 319, 398 A.2d 1120 (1979).

Vaders' attorney made informal requests through letters to the Commission for documents related to her case, but the Commission refused to provide any information, stating that it has a policy not to grant discovery in any of its hearings. Notes of Testimony, November 16, 2007 (N.T.), Ex. A–1; Reproduced Record (R.R.) at 193a–199a. Vaders claims that by failing to provide her with the information, "[t]he Commission's policy effectively precluded [Vaders] from presenting evidence and arguments to counter the Commission's contention that her owner/trainer's license should be revoked for violations of the Commission regulations." Appellant's Br. at 8. However, Vaders' burden was to rebut the presumptions created under Sections 163.303(b) and 163.315 of the Commission's regulations which provide, *inter alia,* that a positive test finding is prima facie evidence that a foreign substance was in the horse while it participated in a race. Knowing the concentration levels that were present in Fourteentwentyone would not help her rebut the presumption that there was a foreign substance in her horse on race day.

Section 163.303(a) of the Commission's regulations states: "A horse participating in a race may not carry in its body a substance except as provided in § 163.304 (relating to substances of therapeutic value)." In Section 163.304 of the Commission's regulations, the Commission has established tolerance levels for a select few therapeutic drugs; Acepromazine is not one of them. 58 Pa.Code § 163.304. There is no provision in the Commission's regulations that the concentration of a drug in a horse's system could mitigate a licensee's liability. Vaders does not deny that the drug was found in her horse's system.[7] In addition, Vaders' attorney did have the ability to obtain the informally requested documents through the subpoena process available under Rule 35.142(a) of the Administrative Rules, but failed to use this course of action.

■ Next, Vaders argues that the Commission abused its discretion by selectively enforcing 58 Pa.Code § 163.316 against Vaders because it had never utilized that regulation to revoke a license in the past. Section 163.316 of the Commission's regulations provides:

> An owner or trainer who once having been suspended for a violation of this chapter . . . and who is thereafter found guilty of a further violation by this Commission . . . shall be considered guilty of a second offense, and the owner or trainer or both shall be ruled off the tracks in this Commonwealth.

Vaders contends that *Meyer v. Pennsylvania State Horse Racing Comm'n,* 72 Pa.Cmwlth. 495, 456 A.2d 1164 (1983), should rule in this case. In *Meyer,* the owner of a horse that placed second in a race contested the penalty assessed to the

---

6. 1 Pa.Code § 35.142(a).

7. The only evidence Vaders presented was her testimony explaining her racing record, that she was never given documents by the Commission, and that she was not with her horses at all times on race day; and the testimony of Michael Ballezzi, Executive Director of the Pennsylvania Thoroughbred Horsemen's Association, concerning his "campaign" to get the Commission to change its "discovery" policy. N.T. at 69–79, 90–92; R.R. at 78a–88a, 99a–101a.

horse that placed first in that race after a prohibited substance was found in its system. Id. Meyer contended that the Commission abused its discretion because it did not disqualify the winning horse. *Id.* The Court found that, because the Commission's regulations stated that penalties *may include* one or more of a list of sanctions, the Commission did not abuse its discretion when it did not disqualify the winning horse from the purse money. *Id.* The Stewards in *Meyer* took into consideration the expert testimony of a professor of veterinary science and toxicology, who indicated that the level of drugs in the winning horse's system would not affect the horse's performance. *Id.*

In the present case, one of the Stewards testified that, in issuing Ruling No. 06299PP, dated August 26, 2006, Vaders was warned, both in writing and in a face-to-face discussion with the Stewards, that another positive test result would result in the revocation of her racing license. N.T. at 44; R.R. at 53a. He testified that between 2003 and 2007, Vaders had five or six positives, and they sat her down and told her she needed to change whatever she was doing. N.T. at 45; R.R. at 54a. Vaders did not appeal Ruling No. 06299PP, nor did she argue, at that time, that the Stewards information on her record was incorrect. N.T. at 45–46; R.R. at 54a–55a. This Steward testified that the Stewards had never enforced 58 Pa.Code § 163.316 before because they never had a trainer or owner with as many violations as Vaders. N.T. at 46; R.R. at 55a. In addition, the Steward testified that they had never revoked a trainer's license at Philadelphia Park Racetrack before Vaders' revocation. N.T. at 47; R.R. at 56a. Even though the regulation calls for revocation after two positives, the Stewards did not revoke Vaders license until she had accumulated seven positive test results. The testifying Steward defended their ac-

tion stating they wanted to be fair to Vaders and that if they revoked every trainer's license after two positives, there would 25% less trainers licensed by the Commission. N.T. at 46, 62–63; R.R. at 55a, 71a–72a. The Stewards had never encountered another trainer with as many positive test results as Vaders had, and they had given her a warning in a ruling prior to her revocation that she had to make changes or face losing her license. Therefore, the Stewards did not abuse their discretion, and the holding in *Meyer* does not compel a different result.

Finally, Vaders complains that the purse money was redistributed without holding a hearing. However, the Stewards' ruling which redistributed the purse money is not the ruling being appealed in the present case. The ruling which redistributed the purse money was Ruling No. 07088PP, dated March 10, 2007. N.T., Ex. C–10; R.R. at 2a. The ruling being appealed is Ruling No. 07128PP, dated April 28, 2007. N.T., Ex. C–10, C–11; R.R. at 2a, 4a. Vaders never appealed the purse distribution ruling and cannot do so as a part of this appeal.

Vaders was entitled to notice and the opportunity to be heard. The evidence shows that she received both. Therefore, the Commission did not violate Vaders' due process rights. Vaders made no attempt to introduce evidence or testimony that she did not violate the Commission's regulations; nor did she ever deny that there were banned substances found in her horse.

Based on the reasons stated above, the Commission's order is affirmed.

## ORDER

AND NOW, this 9th day of January, 2009, the April 16, 2008 order of the Penn-

sylvania State Horse Racing Commission is hereby affirmed.